## Lewis's Estate.

> 203    211
> d221   118

*Decedent's estates—Collateral inheritance tax—Situs of personal property.*

Where a person domiciled in another state dies leaving stocks, bonds and mortgages, which had always been held by an agent in this state for investment and reinvestment, and the executor, legatees and creditors agree that there shall be a complete administration and distribution of the whole estate by the orphans' court of the county in which the securities are held and where the agent resides, the commonwealth is entitled to the collateral inheritance tax on the estate.

Argued April 15, 1902. Appeal, No. 2, Jan. T., 1902, by Lord Butler Hillard, from decree of O. C. Luzerne Co., No. 171, 1899, sustaining exceptions to adjudication in estate of Harriet E. Lewis, deceased. Before McCOLLUM, C. J., MITCHELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Exceptions to adjudication.

TROUTMAN, J., successor to DARTE, auditing judge, filed the following opinion :

In order to arrive at a correct understanding of the situation before us, we will give a brief résumé of the facts developed by the testimony taken at the audit, so far as those facts relate to the question under present consideration.

The testatrix died in the latter part of 1898, at Madison, in the state of New York, where she had resided many years. By her will duly probated in that state she appointed Mr. Lord Butler Hillard her executor, to whom letters testamentary were duly issued. The portion of her estate in Luzerne county, and apparently much the larger part of it, consists of stocks, bonds and mortgages, and other evidences of indebtedness, constituting what may fairly be called intangible property, amounting to $101,512.44, and cash to the amount of $27,516.94.

The executor having filed an account of this property in the register's office, in Luzerne county, Pennsylvania, it was duly confirmed by the orphans' court, October 19, 1900, and on December 7, 1900, regularly came up for audit, during which audit the claim of the commonwealth for her tax was made, and was rejected by the learned auditing judge.

Under the evidence it appears that all the legacies are to collaterals.

If this were all we would have but little difficulty of disposing of the claim of the commonwealth here, for it must now be regarded as a well settled general rule in Pennsylvania that the situs of intangible personal property, such as bonds, notes, stocks, mortgages and other evidences of debt, follows the domicile of the owner. Hence since the domicile of the testatrix was admittedly the state of New York, the state of Pennsylvania could not justly claim the tax.

But it is strenuously contended by exceptant that the legal fiction as to the situs of intangibles has no application to the present case, for two reasons, first, because the actual situs of the property to be distributed to collateral legatees is shown by the evidence to be, as it had been for many years prior to the death of testatrix, within the commonwealth of Pennsylvania under such circumstances as to overcome the legal fiction of the domicile; that is, it had been in the custody and control of resident agents in the city of Wilkes-Barre empowered to invest and reinvest; and, second, because the executor and legatees have requested and consented that a complete administration and distribution of the whole estate, comprehended in the account, should be had in Luzerne county, Pennsylvania, under Pennsylvania laws, by a Pennsylvania court, and not as is usual in mere ancillary accounting transmitted to a foreign forum, and that, therefore, the legatees and executor cannot have the benefit of this departure from the general rule without taking that benefit with its burdens.

The evidence in this case discloses, and we find as matter of fact, that the property and fund for distribution has never been out of this commonwealth, that for a period of five years prior to the death of testatrix all the property represented in the account, that is all the securities comprehended in the inventory, was in the custody and control of Mr. Hillard of Wilkes-Barre (afterwards this executor), who was acting under a power of attorney to invest and reinvest, and for at least twenty years before that was in the custody and under the control of Mr. F. V. Rockafellow, also of Wilkes-Barre, as agent.

That is to say that although the nature of the property accounted for comes fairly within the definition of intangible, yet it was property remaining with the agents of testatrix for a period of twenty-five or thirty years prior to her death, " within the state" of Pennsylvania, and these agents had power of investment and reinvestment.

In the case at bar the securities were not here merely for temporary safekeeping as was the situation in Orcutt's Appeal, 97 Pa. 179, but they appear to have been in the hands of agents for the purpose of transacting business with them, at least to the extent of "investment and reinvestment."

Was this sufficient to give the property accounted for, in-

tangible in its nature as it may be conceded to be, an actual situs in this state independent of and contrary to its constructive and fictional situs at the domicile of the owner, as was the case with the property, an interest in a limited partnership in Small's Appeal, 151 Pa. 1?

In the case last cited our Supreme Court held that such a partnership interest was "tangible personal property having an actual situs within the state, receiving the benefit and protection of its laws during testator's life and since, and therefore subject to the payment of the collateral inheritance tax." The question has been discussed at length in 24 Am. & Eng. Ency. of Law (1st ed.), p. 457 et seq., and in a note referring to Orcutt's Appeal, supra, the commentator makes use of this language : " The bonds in Orcutt's Appeal were in the state merely temporarily for safekeeping. Permanent investments, reinvestments, etc., would probably be classed with tangibles." So also, Weaver's Estate, 12 Lancaster, 57.

While it is true that the mere residence of an agent or registry of stock in his name as such does not seem to be material, yet securities separated from the person of the owner and actually with an agent for collection, investment and reinvestment have been regarded as within the state of the agent under ordinary annual tax laws. See State v. St. Louis County Court, 47 Mo. 600, People v. Commrs. of Taxes, 23 N. Y. 240, Catlin v. Hull, 21 Vt. 152, People v. Smith, 88 N. Y. 576, and Pullman Car Co. v. Pennsylvania, 141 U. S. 18 (11 Sup. Ct. Rep. 876).

In People v. Smith, supra, there is a judicial intimation which shows the growing tendency, at least in New York, to do away with the distinction between tangible and intangible, so far as the question of situs is concerned. " It is clear," says the court in that case, " that mortgages, bonds, bills and notes have for many purposes come to be regarded as property, not as mere evidence of debts, and that they may have a situs at the place they are found like other visible, tangible chattels."

If therefore being " within the state " subjects property to the burden of collateral inheritance tax, the consequence would seem to be that even intangibles, held as the property in the case at bar was for many years prior to the death of testatrix

in the hands of agents in Pennsylvania with authority to invest and reinvest, would be within the law.

The second proposition relied on by the commonwealth concerns the effect of an election to treat the fund as one for distribution in this state. In fairness to the auditing judge it should be remarked that this point was not raised before, or pressed upon him at the audit.

We find from the evidence as a fact in the case that there was an election on the part of accountant to have a full distribution made of the fund by the orphans' court of Luzerne county, and that such disposition was acquiesced in by the legatees and by New York creditors (there appear to have been no others) who appeared with proofs of their claims.

Referring again to Orcutt's Appeal on this branch of the question, a part of the reason why in that case the intangible property was referred to the foreign jurisdiction for full distribution was that the accounting and distribution in the state of Pennsylvania were purely ancillary, and STERRETT, J., states the argument in these words : " How then is it possible to impose a tax on the fund when it has never been ascertained judicially how much or whether any of it will go to collateral legatees ? . . . . The court of the testator's domicile is the only one that can properly determine how much of it will ultimately go to collateral legatees."

There is a plain judicial intimation in these words that in a situation with respect to intangibles such as is presented in the case at bar where both the accounting and distribution were only technically ancillary, where the creditors were those of the domicile of testatrix, where the shares of the collaterals were, as the result of a completed adjudication, ascertained and actually distributed to them or to their trustee under the will, the property would have been considered as having an actual situs in the state of Pennsylvania in contradistinction to its fictional one at the domicile of the testatrix, and might therefore have been subject to the Pennsylvania tax. But there are cases in this state which seem to rule affirmatively this very proposition.

We refer first to Alexander's Estate, 3 Clark, 87: Sir William Alexander domiciled in England died, testate, leaving an estate in Pennsylvania consisting of American stocks of va-

rious kinds. By his will he had bequeathed large pecuniary legacies to nephews and nieces in the city of Philadelphia. An ancillary executor took out letters in Philadelphia county and brought into the orphans' court there the proceeds of the stocks for distribution to the American legatees. Claim was made by the commonwealth under the act of 1826 for her collateral inheritance tax, and in a very able opinion Judge KING decided that she was entitled to it on the precise grounds we are now discussing.

In his opinion Judge KING fully recognized the doctrine of situs and the maxim mobilia sequuntur personam, and also as fully recognized that the administration in Pennsylvania was technically ancillary. Yet he held that when the American legatees required distribution of the funds in the account of the Pennsylvania executor through the medium of a Pennsylvania court and claimed the benefit of the exception to the general rule that would remit them to the foreign forum, they took that benefit as he expressed it, cum onere. He said : " They " (the legatees) " elected to consider the fund as being within the commonwealth for the purpose of distribution to themselves. It must on equal principles be regarded as such by the state government for the purpose of tax."

And further, (page 92) : " In adopting this rule neither the English courts nor our own, in any way intrench upon the known principle that the descent and distribution of personalty is regulated by the law of the proprietor's domicile. We simply hold that when our laws are resorted to for the obtainment of letters testamentary, when assets are within our jurisdiction and the legatees ask and obtain payment of their legacies out of those assets under the authority of our tribunals, they so far give the assets a domestic character as to subject them to domestic taxation."

We may remark here, in passing, that the American legacies had already been charged with the English legacy duty. Such also was the decision in Com. v. Smith, 5 Pa. 142.

The nature of the property in that case was identical with that in the case at bar, that is it was intangible property. It was held that so far as the legacy was payable out of personal assets in Pennsylvania, it was subject to the collateral inheritance tax of that state.

Again, the circuit court of the United States in construing the Pennsylvania law upon this subject seems to recognize the principle contended for: Kintzing v. Hutchinson, 34 Legal Int. 365.

Referring to Commonwealth v. Smith, supra, Judge STRONG of the United States circuit court says that the decision there "seems to have rested on the fact that the will was proved and administered in the state." Continuing, Judge STRONG adds: "So in Alexander's Estate, 4 P. L. J. 448, in the orphans' court of Philadelphia, all that was decided was that county stock and Pennsylvania state stock belonging to a decedent domiciled at his death in London is subject to the collateral inheritance tax where there has been a new administration in the state. It was because the aid of state laws had been invoked and there had been an election to consider the fund as being within the commonwealth."

The learned judge of audit, denying the right of the commonwealth in the case at bar, has cited as the foundation for his ruling that the "situs of intangible property follows the domicile of the owner," the following cases: McKeen v. Northampton County, 49 Pa. 519; Short's Estate, 16 Pa. 63; Appeal of Com., 11 W. N. C. 492; Del Busto's Estate, 23 W. N. C. 111. An examination of each of these cases discloses the fact that in every one of them the administration in Pennsylvania was purely for the purpose of collecting together either the intangible, i. e., the securities or their proceeds, not for the purposes of distribution in this state, but for that of remitting them to the foreign forum for such distribution.

It appears from the evidence taken at the audit that the collateral inheritance tax of our sister state, New York, has already been paid out of the fund going to collateral legatees, although it was paid by the executor in a manner that was at least quasi voluntary, that is, without an adjudication by the surrogate or any adverse proceedings whatever.

We believe that such payment would not, and should not, prevent our taking jurisdiction over this matter, but in answer to the question of interstate comity raised at the argument, it might be interesting to inquire what the New York courts would do, if the situation now before us should appear before them

for adjudication. We find our answer in Estate of Romaine, 127 N. Y. 80; 27 N. E. Repr. 759.

The opinion of a majority of the court, as delivered by Vann, J., was in part, in these words: "Where, however, the money of a nonresident is invested in this state as it was by Mr. Romaine in the bond and mortgage in question, and in deposits made by him in savings banks, or where the property of a nonresident is habitually kept even for safety in this state, we think the statute applies, both in letter and spirit. Such property is within the state in every reasonable sense, receives the protection of its laws and has every advantage from government, for the support of which taxes are laid, that it would have if it belonged to a resident."

Under the circumstances of this case as we have found the facts and the law applicable to it, as we read it, we have thus come to a different conclusion from that of our learned predecessor upon this bench, and are constrained, both by reason and authority, to hold that the claim of the commonwealth for her tax must be sustained.

*Error assigned* was decree dismissing exceptions to adjudication.

*Daniel A. Fell*, for appellant.

*H. W. Palmer*, with him *J. A. Opp*, for appellee.

Per Curiam, June 4, 1902:

The decree is affirmed upon the opinion of the court below, covering the question raised by this appeal.