# Shoenberger's Estate.

*Taxation—Collateral inheritance tax—Decedents' estates—Conversion of real estate—Domicile—Wrongful payment of tax—Legacy—Will.*

Where a testator domiciled in another state directs his executors to sell and convert into cash his real estate, the proceeds of the sale of real estate situated in Pennsylvania is not subject to the payment of a collateral tax to the state of Pennsylvania, inasmuch as the real estate was converted into personalty, and its situs was at the time of the testator's death in the state of his domicile, and therefore not subject to the Pennsylvania tax.

Where a testator domiciled in another state appointed an executor as to his estate within the state of his domicile, and also appointed executors in Pennsylvania, as to all his other estate, directing a sale of the real estate wherever situated, except lands specifically devised, and also directing the executors of his domicile, after paying legacies, to

pay over any balance to the Pennsylvania executors, and it appears that the executors in Pennsylvania improperly, but without objections by the residuary legatees, paid to the state of Pennsylvania a collateral tax on real estate situated in Pennsylvania, and after several accounts had been filed and distribution made without deduction for collateral tax there remained only one legacy to be paid and the residuary estate to be distributed, five per cent cannot be deducted from such legacy as such legacy's proportion of the collateral tax paid to the state.

Argued Jan. 16, 1908. Appeal, No. 372, Jan. T., 1907, by St. Margaret Memorial Hospital, from decree of O. C. Phila. Co., Jan. T., 1891, No. 465, sustaining exceptions to adjudication in Estate of John H. Shoenberger, deceased. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Exceptions to adjudication of PENROSE, J.

In addition to the facts stated in the opinion of the Supreme Court it appeared that the auditing judge awarded a legacy of $250,000 to the St. Margaret Memorial Hospital. Exceptions were filed to the adjudication on the ground that the collateral tax had not been deducted from the legacy. The court sustained the exceptions.

PENROSE, J., filed the following opinion:

When Miller v. Com., 111 Pa. 321, decided that lands in another state of which a Pennsylvania testator died seized were made subject to collateral inheritance tax, under the doctrine of mobilia sequuntur personam, if his will worked a conversion and gave the proceeds of sales to collaterals (though the conversion, of course, did not take place during his lifetime); it necessarily followed, conversely, that when lands in Pennsylvania are converted by the will of a nonresident owner, the proceeds are free from tax.

But, unfortunately, in the present case, this was not affirmatively decided by the Supreme Court until 1893 (Coleman's Estate, 159 Pa. 231); and in the meantime, in 1891, tax upon the lands of the decedent in Pennsylvania was demanded, upon a valuation of $515,000, although he was a citizen of New York, and his will, proved in 1889, directed that they should be sold. The tax thus paid amounted to $25,750.

VOL. CCXXI—8

There have been eight previous accounts, all of which were duly adjudicated ; and, following the decision of Judge Strong in Kintzing v. Hutchinson, 7 W. N. C. 226, which had always been accepted as settling the law that the personal estate of one domiciled out of the state was not subject to collateral inheritance tax in Pennsylvania, payments to the various pecuniary legatees were awarded without deduction of tax. No exceptions to any of these adjudications, of which the last was in September, 1897, were filed by the commonwealth.

Five years later, however, in Lewis's Estate, 203 Pa. 211, it was decided, by a per curiam, adopting the opinion of the court below (orphans' court of Luzerne county), that when the " executors, legatees and creditors of one domiciled in another state agree that there shall be a complete distribution " in Pennsylvania of the assets actually in the state, " the commonwealth is entitled to the collateral inheritance tax."

The present account, which was filed in February, 1907, and came before the court for adjudication in the following June, is of the residuary estate of the testator given to his executors in trust to hold " and as soon as practicable convert the same into money and to pay over to ' The St. Margaret Memorial Hospital,' hereinbefore provided to be incorporated, the sum of $250,000, to be added to the permanent fund of the corporation for the maintenance of said hospital as a free institution," the residue to be divided among his brothers and sisters and their children, etc., as there set forth.

Neither the hospital (which as the will shows was one of the chief objects of the testator's bounty), nor the commonwealth was represented before the auditing judge, and there being nothing at the time to show that the legatee had joined in the request for distribution, and no demand for tax being made for the commonwealth, the legacy was awarded without deduction.

The effect of this is that the entire tax on real estate paid in 1891, $25,750, to which the commonwealth was not entitled, falls upon the final distributees of the residuary estate, while the legacy of $250,000, which, under Lewis's Estate, is subject to tax (the legatee now coming, by counsel, before the court and asking for payment in full), is relieved altogether.

As between the legatee and the other distributees of the

residuary estate, there is not sufficient evidence of intention afforded by the will to exempt the former from the burden and cast it upon the latter, and the exceptions which have been filed must therefore be sustained, so much of the amount already received by the commonwealth, in 1891, as equals the tax on this legacy, $12,500, being applied as if now awarded, and the award to the legatee being reduced accordingly.

The exceptions are sustained and the adjudication and schedule of distribution modified in conformity with this opinion.

*Error assigned* was decree sustaining the exceptions.

*William R. Blair*, with him *George C. Burgwin*, for appellant.—We submit that the appellant's legacy was liable for, and having paid a collateral inheritance, tax in the state of New York, it was not liable to the taxation in the state of Pennsylvania: Coleman's Appeal, 159 Pa. 231 ; Williamson's Estate, 153 Pa. 508 ; Miller v. Com., 111 Pa. 321 ; Miller's Estate, 182 Pa. 157 ; Handley's Estate, 181 Pa. 339.

But assuming for argument's sake that the legacy might have been taxed by the state of Pennsylvania, that does not justify the decree of the court below.

The payment of the sum of $25,750 to the state of Pennsylvania as a compromise, and without any regular assessment or adjudication of the right of the state to the claim made by it, was a mere payment of an illegal demand against the estate, and surely cannot be chargeable in any part against the appellant.

But finally, we submit that the payment of $25,750 to the state being clearly without warrant of law, it is clear that no part of the sum can be assessed, as a collateral inheritance tax, against the legacy of appellant. It is extremely difficult to see how logically, or justly, this could be done, even if appellees had had no other remedy. But they did have another remedy, an undoubted remedy, and a full and complete remedy. This remedy was, of course, the right to file exceptions to the credit claimed for said payment in the account, and to have recovered back from the state, through executors, the sum thus illegally paid the state of Pennsylvania. But this they did not do.

Finally, we submit there is no equity in assessing nearly one-half of this illegal payment against appellant in favor of the appellees here.

*John G. Johnson,* for appellees, Horace Smith et al.

*James E. Hood,* for appellees, Alice E. Shoenberger et al.

*William Early Rhein,* for appellee, Charles Chauncey, assignee of Ethelbert Watts.

OPINION BY MR. JUSTICE BROWN, May 4, 1908:

John H. Shoenberger, a resident of the city of New York, died there in November, 1889, possessed of a large estate. He was childless, but left a widow, to whom, by his will, executed March 10, 1887, he devised certain real estate and gave all of his personal property in his residence and stable. In addition, he gave her certain securities, of the value of several hundred thousand dollars, and any balance that might remain of a deposit to his credit in a New York bank, after the payment of his funeral expenses, just debts and the costs of the administration of that portion of his estate given to his wife. After making this provision for her, he made the following appointment of executors by the third clause of his will : "I hereby nominate and appoint my beloved wife, Alice, executrix, and my nephew, Alexander T. Mason, executor, of this my will, in relation to the portion of my estate mentioned in the second clause of this my will ; and of whatever portion of my estate may be situate at the time of my decease in the State of New York, and I direct that neither of them shall be required to give security for the performance of their duties. And I hereby order, authorize and direct my executor, above named, to pay and hand over any portion of my estate, whether moneys in bank, bonds, mortgages, certificates of stock, notes or other securities which may be in the City of New York at the time of my decease, and which are not hereinbefore specifically bequeathed, to the trustee and executors hereinafter appointed for the States of Pennsylvania, Ohio, Kentucky and Illinois, the said portion so paid over to form part of my general estate to be administered by them." The trustee and executors referred to in the fore-

going clause were appointed by the following: "I do hereby constitute and appoint 'the Pennsylvania Company for the Insurance on Lives and the Granting Annuities of the City of Philadelphia,' Pennsylvania, my Trustee and Executors, and my friends, Andrew Long, Esq., now cashier of the Exchange National Bank of Pittsburg, Pennsylvania, J. M. Brownson, Esq., now in the employment of Messrs. Shoenberger, Speir and Co., of Pittsburg, Pennsylvania, and Anthony J. Antello, Esq., of Philadelphia, Pennsylvania, as co-executors of this my last Will and Testament, for all that portion of my estate, real and personal, and effects and interests in the States of Pennsylvania, Ohio, Kentucky and Illinois, and of any property that may be transferred to them upon the close of the administration of my estate in the State of New York by my Executors hereinbefore appointed by me for that State."

The entire personal estate of the decedent remaining after the provision for his wife, together with the proceeds of his real estate, which he directed his Pennsylvania executors to convert into money, passed into their hands. They filed nine accounts in the court below, the last involving nothing but the residuary estate. All of the pecuniary legacies, except those given in the residuary clause, were paid on the adjudications of the prior accounts, the eighth having been adjudicated on December 10, 1897. At that time there was a balance of $81,-332.39, and it was directed to be held for a further account. It is included in the last account, showing a fund in the hands of the accountants of $272,276.63, out of which they are directed to pay to the appellant a bequest of $250,000.

Though the bulk of the personal estate of the testator, including the proceeds of the sale of the real estate, passed into the hands of the Pennsylvania executors, the commonwealth made no claim for collateral inheritance tax on the legacies heretofore paid by them, amounting to $1,326,000. In October, 1891, a collateral inheritance tax of $25,750 was paid "as per compromise" on $515,000, the appraised value of testator's real estate, situated in this state, and, on the final distribution of the residuary estate, the court below deducted $12,500, or five per cent, from the bequest to the appellant, holding that though the commonwealth had not been entitled to the tax of $25,750 paid on the real estate, the appellant's legacy of $250,-

000 was liable to tax under Lewis's Estate, 203 Pa. 211, and deducted the same from it, to the relief of the final distributees of the residuary estate. The single question before us is the correctness of this ruling. From all that appears the collateral inheritance tax of $25,750 may have been paid upon the real estate of the testator, which he specifically devised; but, assuming it to have been upon that sold by the executors, the learned judge of the orphans' court correctly held that the commonwealth was not entitled to collateral inheritance tax upon it: Coleman's Estate, 159 Pa. 231; and, this being so, Lewis's Estate is not authority for relieving the final distributees at the expense of the appellant.

The final distributees of the residuary estate having permitted the tax of $25,750 to be paid to the commonwealth, they cannot now ask that $12,500 be deducted from appellant's legacy, to their relief. They ought to have protected themselves at the proper time. Even if the tax had been properly paid, there is no reason why appellant's legacy should bear the burden of nearly half of it, instead of its just proportion, as one of many legacies amounting in the aggregate to more than $1,500,000.

The liability of the property of a decedent to collateral inheritance tax is to be determined by its situs at the time of his death. The words of our collateral inheritance tax Act of May 6, 1887, P. L. 79, are: " All estates, real, personal and mixed, of every kind whatsoever, situated within this state, whether the person or persons dying seised thereof be domiciled within or out of this state, and all such estates situated in another state, territory, or country, when the person, or persons, dying seised thereof, shall have their domicile within this commonwealth, passing from any person, who may die seised or possessed of such estates, either by will, or under the intestate laws of this state, or any part of such estate, or estates, or interest therein, transferred by deed, grant, bargain or sale, made or intended to take effect, in possession or enjoyment after the death of the grantor or bargainor, to any person or persons, or to bodies corporate or politic, in trust or otherwise, other than to or for the use of father, mother, husband, wife, children and lineal descendants born in lawful wedlock, or the wife, or widow of the son of the person dying seised or possessed

thereof, shall be and they are hereby made subject to a tax of five dollars on every hundred dollars of the clear value of such estate or estates." The situs of the personal property of this testator at the time of his death was in New York, for it was all actually "situated" there, except the proceeds of the real estate which he directed to be converted into money, and this must be regarded as part of his personal estate situated in his domicile, for the status of property at the instant of death must govern the question of tax: Handley's Estate, 181 Pa. 339. At the instant of the testator's death his real estate, which he had directed to be converted into money, became, by operation of law, so converted, and all of the personal estate belonging to him was, therefore, either actually or by legal fiction, within the state of New York. None of it having been "situated" here at the time of his death, the commonwealth had no claim upon it for collateral inheritance tax. The domicile of the testator, at the time of his death, was the situs of his personal estate, and that situs, and not what he directed to be done with his estate, is the sole test of the right of this sovereignty to tax it. The state taxes, and can tax, only what is within it at the time of the death of the owner of it.

Lewis's Estate—not a convincing authority—was decided upon its own peculiar facts, and is not to be stretched, as it manifestly was by the court below, in extending it to the present case. The actual situs of the property of Harriet E. Lewis, which she directed to be distributed among collateral legatees, was, at the time of her death, and had been for many years prior thereto, within this state, in the custody and control of her agents here, empowered to invest and reinvest it, and the executor, legatees and foreign creditors requested that there should be in Luzerne county, through its orphans' court, "a complete administration and distribution of the whole estate comprehended in the account." No such situation is presented here, and there is not even the analogy which the learned judge below seemed to think existed of "the legatee now coming, by counsel, before the court and asking for payment in full." The appellant did not even appear before the adjudicating judge to claim the legacy, according to the appearances noted by him. Its first appearance by counsel, so far as can be

gathered from the record, was before the court in banc on exceptions to the adjudication, to resist the attempt of the appellees to have $12,500 deducted from its legacy.

The decree of the court below is reversed, the exceptions to the adjudication are overruled and the same is confirmed, the costs on this appeal to be paid by the appellees.