## Rutherford's Estate.

*Collateral inheritance tax — Intangible assets of foreign decedent upon ancillary accounting—Act of May 6, 1887.*

1. Where the accounting is ancillary, the determining factor as to liability for collateral inheritance tax is whether distribution is to be made within and under the law of the Commonwealth.

2. If, upon the accounting of an ancillary administrator of a foreign decedent, the legatees request distribution to be made directly to them by the Pennsylvania court, without paying the fund to the foreign executor, intangible assets, so distributed, are subject to collateral inheritance tax.

Exceptions to adjudication. O. C. Phila. Co., July T., 1921, No. 443.

*Stevens Heckscher*, for exceptant.

*Abraham Berkowitz*, for Commonwealth, contra.

GEST, J., June 9, 1922.—Margaret Rutherford died on March 28, 1912, domiciled in Ireland, where her will was admitted to probate in the same year, letters testamentary being granted to George Rutherford, also domiciled in Ireland. By her will she provided, *inter alia:* "I bequeath to my sisters, Mary, Agnes Jane and Elizabeth, all my property whatsoever in the United States of America bequeathed to me by the late Emily Gowen Tozzi, share and share alike." These persons are also the residuary legatees, and are resident in Ireland.

The property thus specifically bequeathed had been acquired by the decedent from the estate of Emily Gowen Tozzi, deceased, who died in 1908, a resident of Italy, leaving a will, by which she bequeathed her residuary estate, consisting of an interest in the estate of Mary Gowen, of this city, to the said Margaret Rutherford. The assets consisted of certain mortgages secured on Philadelphia real estate, corporate stock and cash, and the securities are stated to have been transferred into the name of Margaret Rutherford. Her income was collected here by her agent from that time until her death, and thereafter was collected for her legatees until Aug. 26, 1920, when, in order to satisfy certain mortgagees and assign certain stocks, ancillary letters *d. b. n. c. t. a.* were granted to the present accountant, who filed this account, and in his petition for distribution asked that the balance for distribution, composed entirely of these assets originally derived from the estate of Emily Gowen Tozzi, be awarded to the three sisters of the testatrix, Mary, Agnes Jane and Elizabeth Rutherford; George Rutherford, the executor at the domicil, having previously died in 1912. The auditing judge so awarded the fund, but held that the award was subject to the payment of collateral inheritance tax to the Commonwealth, with interest, and this award of tax is the basis of the exceptions filed by the accountant.

The question has not escaped us whether the accountant has any status to except to this award, Farrell's Estate, 1 D. & C. 128, but as the parties interested are not residents of this country, the accountant might perhaps file exceptions in their behalf, at least *pro tempore*, as in Koch's Estate, 4 Rawle, 268; in connection with which, see Wick's Estate, 50 Pa. Superior Ct. 614.

Passing over this matter of practice to the question of taxation, we are all of opinion that the auditing judge, in his adjudication, correctly stated the law in accordance with the decisions. It may be conceded, as the learned counsel for the exceptant has argued, that personal property, such as stocks, bonds and mortgages, derive their *situs* from the domicil of the owner, according to the maxim *mobilia personam sequuntur*, and, of course, if the auditing

judge had been requested to award the balance in the hands of the accountant to the executor or administrator of the domicil, he would have so awarded it, free of tax. The law in such a case as the present is well stated in our earliest decision, Alexander's Estate, 3 Clark, 87 (1845), in the Orphans' Court of Philadelphia, where King, P. J., said, in speaking of the legatees who demanded distribution in this jurisdiction (page 90): "They elect to consider the fund as 'being within this Commonwealth' for the purpose of distribution to themselves. It must, on equal principle, be regarded as such by the State government for the purpose of tax. They invoke and obtain the aid of our laws, and properly ought to share their burdens as well as their benefits. Under similar circumstances, the English Government demand their legacy duty." And, after discussing the English cases, this learned judge continued (on page 92): "This rule seems to me to hold equally good in Pennsylvania. Its establishment rules this case against these exceptants and subjects their legacies to the duty. In adopting this rule, neither the English courts nor our own in any way intrench on the fundamental principle that the descent and distribution of personalty is regulated by the law of the proprietor's domicil. We simply hold that when our laws are resorted to for the obtainment of letters testamentary, when the assets are within our jurisdiction, and the legatees ask and obtain payment of their legacies out of those assets under the authority of our tribunals, they so far give the assets a domestic character as to subject them to domestic taxation." This principle was the real, or at least the solid, foundation of Lewis's Estate, 203 Pa. 211, criticised, in other respects, in Shoenberger's Estate, 221 Pa. 112, as was shown by the Supreme Court in de Noailles's Estate, 236 Pa. 213; and in this court the settled practice has been followed in Galli's Estate, 21 Dist. R. 763; Gulick's Estate, 22 Dist. R. 249, and Craig's Estate, 27 Dist. R. 49. Hatfield's Estate, 43 Pa. C. C. Reps. 510, decided by the Orphans' Court of Allegheny County, was cited to the contrary, but, in view of the authorities above referred to, our opinion is not affected by that decision.

The learned counsel for the exceptant seemed apprehensive lest, if the tax should be awarded, it would carry interest at the statutory rate of 12 per cent. from the death of the testatrix; but, as the attorney for the Commonwealth has informed us that he does not ask for this, the question need not be discussed or decided. The adjudication will accordingly be modified by striking out the allowance of interest, and, it being thus modified, the exceptions thereto are dismissed and the adjudication is confirmed absolutely.