## Easby's Estate.

*Taxation—Inheritance tax—Nonresidents—Personal property— Ancillary administration — Distribution — Domestication of personal property—Act of June 20, 1919, P. L. 521.*

1. While it is true that, where ancillary administration has been raised in Pennsylvania, the funds in the hands of the accountants will be applied to the payment of domestic creditors, and the balance remitted to the domiciliary jurisdiction, yet the orphans' court has the right to exercise a discretion in determining whether it itself will distribute the fund among the parties entitled thereto, or remit it to the forum of domicil for the purpose of distribution there.

2. Where a nonresident intestate dies leaving in Pennsylvania bonds of corporations not incorporated in this State, and ancillary administration is raised in the State, and the orphans' court of its own initiative, and without request of the collateral kin resident in Pennsylvania, distributes the balance of the estate to them instead of to the domiciliary administrator, the Commonwealth cannot assert that the bonds had been domesticated and levy on them a collateral inheritance tax under the Act of June 20, 1919, P. L. 521: Lewis's Est., 203 Pa. 211, distinguished.

3. In such case the Commonwealth cannot assume as a fiction of law that decedent died in this State, when as a fact he died in another state.

4. The status of property at the instant of death of the owner must govern the question of tax, both as to liability and amount.

5. Intangible property of a nonresident is not taxable in Pennsylvania.

6. Unless the law clearly indicates that personal property is taxable, it cannot be taxed.

7. Where an act does not impose a tax on the holdings of a nonresident decedent, save in the instances which it specifies, it cannot be intended to embrace other property of the decedent.

Argued November 24, 1925. Appeal, No. 12, May T., 1926, by Commonwealth, from decree of C. P. Dauphin Co., Commonwealth Docket 1925, No. 95, sustaining appeal from transfer inheritance tax in Estate of Paul H. Easby. Before Moschzisker, C. J., Frazer, Walling, Simpson, Sadler and Schaffer, JJ. Affirmed.

Appeal from appraisement for transfer inheritance tax. Before Fox, J.
The opinion of the Supreme Court states the facts.
Appeal sustained. Commonwealth appealed.

*Error assigned* was, inter alia, decree, quoting it.

*J. Lee Patton,* special attorney, with him *Philip S. Moyer,* Deputy Attorney General, and *George W. Woodruff,* Attorney General, for appellant.—The intangible assets in Pennsylvania were domesticated: Com. v. Giltinan, 64 Pa. 100; Alexander's Est., 3 Clark 87; Gulick's Est., 22 Pa. Dist. R. 249; Galli's Est., 21 Pa. Dist. R. 763; Lewis's Est., 203 Pa. 211; Craig's Est., 27 Pa. Dist. R. 49; Shoenberger's Est., 221 Pa. 112.

It appearing from the decisions that the parties, having elected to have distribution here, have elected to treat this intangible personal property as if its situs was here, and as this personal property was of a character and description that followed the domicile of the owner, and, in this case, had no situs separate and apart from the owner, they have elected to have the estate treated precisely as if the owner had died domiciled here.

*L. L. Smith,* of *Smith & Strong,* with him *John McI. Smith* and *J. E. B. Cunningham,* for appellees.—The tangible assets of the Easby Estate were never within the Commonwealth in the legal sense: Handley's Est., 181 Pa. 339; Jackson v. Myers, 257 Pa. 104; Billing's Est., 268 Pa. 71; Kirkpatrick's Est., 275 Pa. 271; Spangler's Est., 281 Pa. 118.

OPINION BY MR. JUSTICE SCHAFFER, January 4, 1926:

The Commonwealth appeals from the refusal of the court below to subject the estate of the decedent, who died domiciled in the State of Missouri, to the payment of the transfer taxes provided by the Act of June 20, 1919, P. L. 521, asserting that there had been a domestication of the assets of the estate as a consequence of their distribution to the parties in interest by the Orphans' Court of Philadelphia County, in its adjudication on the account of the Pennsylvania ancillary administrators.

The act of assembly in question provides for the imposition of a tax upon the transfer of property, "When the transfer is by will or intestate laws *of real property within this Commonwealth or of goods, wares or merchandise within this Commonwealth or of shares of stock of corporations of this Commonwealth or of national banking associations located in this Commonwealth* and the decedent was a nonresident of the Commonwealth at the time of his death."

Paul H. Easby, the decedent, was a resident of the State of Missouri and died domiciled therein. Letters of administration on his estate were there taken out. Subsequently, ancillary letters were issued in Pennsylvania. The decedent left to survive him five brothers, a sister, a half brother and a half sister, all of whom at the time of his death resided in Pennsylvania, with the exception of one brother resident in California. The estate in this jurisdiction was of the value of $90,000. It consisted of an automobile, a watch and chain, bonds of various corporations, none of which was incorporated in Pennsylvania, and cash. For the purpose of state taxation, the auditor general made an appraisement of the automobile and watch. The securities and cash were not appraised and the tax on the appraised property was paid by the ancillary administrators. When their account came up for adjudication before the Orphans' Court of Philadelphia County, a petition was presented by the ancillary administrators, wherein the sug-

gestion was made that as most of the parties in interest resided in Pennsylvania the estate should be distributed by the court to the parties in interest rather than to the administrator of the domicil, a trust company. This suggestion was opposed by the domiciliary administrator. Distribution was made, however, as suggested, the sum of $20,000 being withheld for further distribution to meet the outcome of litigation against the estate pending in Missouri and to pay such taxes as might be payable, together with counsel fees, commissions and other expenses connected with the administration.

Distribution having been made to the collateral heirs, the auditor general proceeded to make another appraisement of the assets so distributed for the purpose of assessing the transfer tax thereon. From this appraisement an appeal was taken to the Court of Common Pleas of Dauphin County, which set it aside and that action we are requested by the Commonwealth to review.

It is argued by counsel representing the Commonwealth that the parties entitled to the estate having elected to treat the property in the hands of the ancillary administrators as domestic assets, as a consequence of their distribution by the Orphans' Court of Philadelphia, and having received the shares coming to them through that tribunal, instead of permitting them to be remitted to the domiciliary administrator, thereby gave the assets of the estate in this jurisdiction a domestic character, so as to subject their transfer to the tax to which a domestic estate would be subjected; and when our laws are resorted to for the obtainment of letters of administration, whether ancillary or original, and assets are within this jurisdiction and the parties entitled to receive them ask for and obtain possession thereof under the authority of our tribunals, they so far give the assets a domestic character as to subject them to the tax in question. Reliance is placed for the position taken upon the cases of Alexander's Est., 3 Clark

87; Lewis's Est., 203 Pa. 211, and Hostetter's Est., 267 Pa. 193.

The Commonwealth does not make any quarrel with the principle that the situs of intangible personal property such as stocks, bonds and other securities is that of the decedent at the time of his death, but contends that the parties in interest have elected to consider this intangible personal property as if its situs were here and to have the estate treated precisely as if the decedent had died domiciled here. One barrier to the successful advancement of the Commonwealth's position is that there was no request by the heirs to make distribution here; such distribution was made by the court solely upon the suggestion submitted by the ancillary administrators in their petition for distribution and not upon the request of the distributees, in which respect this case differs from Lewis's Est., 203 Pa. 211, where it was determined that when a person domiciled in another state dies leaving stocks, bonds and mortgages which had always been held by an agent in this State for investment and reinvestment, and the executor, legatees and creditors agree that there shall be a complete administration and distribution of the whole estate by the orphans' court of the county in which the securities are held and where the agent resides, the Commonwealth is entitled to the collateral inheritance tax on the estate. This same ruling was made in Alexander's Est., 3 Clark 87, under somewhat similar facts but those are not the facts with which we are now dealing. Hostetter's Est., 267 Pa. 193, in no way parallels the case at bar on its facts.

It is the rule that "The status of the property at the instant of death must govern the question of tax, both as to liability and amount": Handley's Est., 181 Pa. 339, 346; Jackson v. Myers, 257 Pa. 104. It is conceded that at the death of the decedent the property passing to his heirs was not subject to the tax now sought to be collected. Intangible personality of a nonresident is not taxable here: Countess De Noailles' Est., 236 Pa. 213;

Schoenberger's Est., 221 Pa. 112; Arbuckle's Est., 252 Pa. 161. It is generally true that where ancillary administration has been raised in this State the funds in the hands of the accountants will be applied to the payment of domestic creditors and the balance remitted to the domiciliary jurisdiction: Middleby's Est., 254 Pa. 328. But the orphans' court has a right to exercise a discretion in determining whether it will distribute the fund itself among the parties entitled thereto or remit it to the forum of the domicile for the purpose of distribution there: Ibid; Bertin's Est., 245 Pa. 256.

Speaking of Lewis's Est., 203 Pa. 211, the Commonwealth's main reliance, we said in Schoenberger's Est., 221 Pa. 112, at page 119, "Lewis's Estate—not a convincing authority—was decided upon its own peculiar facts, and is not to be stretched, as it manifestly was by the court below, in extending it to the present case"; and in Countess De Noailles' Est., 236 Pa. 213, 216, our reference to it was, "We have heretofore said of it that it was decided upon its own peculiar facts and is not to be stretched......One of the two reasons given by the court below in Lewis's Estate for holding that it was liable to collateral inheritance tax here was that, as the executor and legatees had requested and consented that a complete administration and distribution of the whole estate comprehended in the account should be had in Luzerne County, under Pennsylvania laws, by a Pennsylvania court, and not as is usual in mere ancillary accounting, transmitted to a foreign forum, they could not have the benefit of this departure from the general rule without taking that benefit with its burdens. It was for this reason that the decree was affirmed." We think it would be stretching the principle laid down in Lewis's Estate to tax property passing from the estate of this decedent under a distribution made by the orphans' court in the exercise of its discretion under the facts as they were shown.

Furthermore, when we take into account that the act with which we are dealing provides for the imposition of the tax on property of a nonresident decedent only where such property is "real property within this Commonwealth" or "goods, wares or merchandise" therein or "shares of stock of corporations of this Commonwealth" or "of national banking associations located" therein and that in the present instance, the tax is not being imposed on any of these, and bearing in mind the rule that unless the law clearly indicates that personal property is taxable, it cannot be taxed (Com. v. Pennsylvania Water & Power Co., 271 Pa. 456), there is no warrant for the imposition of the tax in the present case. As the act does not impose a tax on the holdings of a non-resident decedent, save in the instances which it specifies, it cannot be extended to embrace other property of the decedent. To say that this property was domesticated by what was done in the orphans' court would not advance the result sought by the Commonwealth, because such property of a nonresident decedent is not within the scope of the act and would not be brought within its scope by being "domesticated." What the Commonwealth is really contending is that the effect of what was done in the orphans' court was to domesticate the decedent not his assets, and in effect to declare him a resident of the Commonwealth, the result of which would be to subject the property in question to the transfer tax. This is made manifest by the brief of appellant's counsel, in which they say: "We contend that the parties by their election have established a legal fiction, that so far as the assets in Pennsylvania are concerned, they are to be treated as if the decedent died domiciled here. For the purpose of ascertaining the tax, we assume as a fact the fiction that the decedent died domiciled here and hence the assets found here are to be taxed as the domestic assets of a domestic decedent." To indulge in the make-believe that the decedent died in this State when he did

not, would be a departure from realities which, even though the Commonwealth be the contender for it, cannot receive judicial sanction.

The judgment of the court below is affirmed.