## Bomberger's Estate

*Harold E. Martin*, for exceptant.
*Charles G. Baker*, contra.

APPEL, P. J., April 6, 1943.—Exceptions on behalf of the Commonwealth to the adjudication filed by this

court in this estate aver that this court erred in its method of fixing the transfer inheritance tax imposed upon this estate under article I, sec. 1, of the Act of June 20, 1919, P. L. 521, as amended, 72 PS §2301, and the rates at which such taxes are to be calculated under section 2 of this act, as amended by section 1 of the Act of June 24, 1939, P. L. 721, 72 PS §2302.

The Commonwealth's contention is that no part of the estate is subject to a two percent tax, but that the whole taxable estate is subject to collateral transfer inheritance tax at the rate of 10 percent under the facts and for the reasons hereinafter set forth.

No creditors of decedent or persons other than the Commonwealth, as to the tax, and the distributees of the estate, as to the amounts which they are to receive after deduction of the tax, are interested in the determination of these exceptions.

The facts which give rise to these exceptions will be considered in chronological order, together with such parts of the laws of wills and of descent and distribution of decedents' estates as are applicable to such facts as they develop in each phase of the discussion of the facts.

On March 2, 1926, the present decedent, being a widow, without children or descendants, possessing a considerable personal estate and seized of several parcels of real estate, executed her will disposing of her estate for the support of her father and after his death to her brothers and sisters.

On January 16, 1929, decedent married William A. Bomberger. There were no children born of this marriage.

On August 16, 1941, decedent died without having changed her will (in which no provision for her husband had been made, it having been executed before the marriage), and was survived by her husband and by brothers and sisters named in the will.

The rights of the husband in this decedent's estate

were established under section 21 of the Wills Act of June 7, 1917, P. L. 403, as amended by the Act of May 20, 1921, P. L. 937, 20 PS §273, providing as follows:

"When any person, male or female, shall make a last will and testament, and afterward shall marry . . . and shall die leaving a surviving spouse . . . so far as shall regard the surviving spouse . . . shall be deemed and construed to die intestate; and such surviving spouse . . . shall be entitled to such purparts, shares, and dividends of the estate, real and personal, of the deceased, as if such person had actually died without any will."

See Neill's Estate, 222 Pa. 142, Pfanenschmidt's Estate, 35 Montg. 135 (1919), Shestack's Estate, 267 Pa. 115 (1920), and Shoch's Estate (No. 1), 271 Pa. 158 (1921).

In Edwards' Appeal, 47 Pa. 144 (1864), the testator made his will on September 10, 1856, devising his estate, real and personal, in trust for the benefit of his friend, Sarah Devitt, to whom he was married on February 11, 1858. On August 10, 1860, testator died, leaving to survive him his widow, and on August 25, 1860, a son was born to the widow. The court, at page 152, said:

"Upon this state of facts it is safe and easy to say that the marriage revoked the will as to Mrs. Edwards. The revocation as to her did not depend on the *provision* made for her, it resulted absolutely as a legal consequence of the marriage. The statute annexes the condition of *provision* to the children, not the widow. As to 'child or children *not provided for* in such will,' it is revoked; but as to children who are provided for, it is not revoked by the marriage of the testator and birth of issue. The revocation as to the widow, I repeat, was absolute the instant of the marriage. It did not wait for her election, any more than it depended on the provision made for her. And a will revoked is as if it had never been made. The statute plainly declares this to

be the effect of revocation; the testator shall be deemed and construed to die intestate, and his estate, so far as concerns the parties in behalf of whom the revocation occurs, is distributable 'as if he had actually died without any will.' "

The purparts, shares, and dividends in this estate which vested in the surviving husband immediately at the time of decedent's death under section 2 (*a*) of the Intestate Act of June 7, 1917, P. L. 429, and the Act of June 11, 1917, P. L. 755, 20 PS §11, was the sum of $5,000 and one half of the real and personal estate remaining after payment of all just debts and legal charges.

From the chronological statement of facts in this case it is unnecessary to decide whether decedent's will was revoked on the date of the marriage by the marriage or was revoked on the date of her death. The status of the husband remained the same from the one date to the other. The material and important facts and the law applicable thereto, so far as concerns the present discussion, are that on the instant that testatrix's spirit fled from her body or was borne away all estates, rights, and liabilities which depended on that death became absolute, fixed, and established. At that instant, the surviving husband by operation of law became absolutely seized with title to and right of possession of the share, estate, interest or proportion of the decedent's estate which was cast upon him by the laws to which reference has been made. These came to and vested in him in the same manner and with the same legal incidents of ownership as if decedent left no will or testamentary disposition of any kind or character. At the same instant of decedent's death her brothers and sisters came into their inheritance under the will, not, however, to the full extent mentioned therein or intended thereby, but subject in quantity and quality to modification by the absolute and vested rights of the surviving husband in the estate. True, the values of

the estate or their proportionate *admeasurement* to the parties was not then determined, but the rights were so established and fixed that under proper legal procedure the values and admeasurements could be ascertained and secured.

At the same instant that the rights of certain persons in decedent's property became fixed the long-reaching and inescapable taxing arm of the Commonwealth stretched out and seized the property left by decedent with a transfer inheritance tax liability claim or lien which it was necessary to pay, satisfy, and discharge, as the price reserved by the Commonwealth upon the payment of which the owners would be entitled to receive their property from decedent.

The nature and character of this tax is discussed in Tack's Estate, 325 Pa. 545 (1937), at page 548:

"The right to transmit or to receive property by will or through intestacy is not a natural right but a creature of statutory grant. Students of law agree that the State has the right to declare an escheat of *all* the property of a decedent, and therefore, as the price of allowing a legatee, devisee or heir to inherit, it may appropriate to itself any portion of the property which it chooses to exact. Whether this appropriation be designated an inheritance tax, an estate tax, a succession tax, a death duty, or otherwise howsoever, it is not, in its essence, a tax on the decedent's property or any component part of it, or on the transaction of transferring it as in the case of a transmission of possession or title inter vivos, but an excise on the privilege of inheritance. It is really not a tax at all in the ordinary meaning of the word, but rather a distributive share of the estate which the State retains for itself. Its true nature is not changed by the fact that it is assessed and measured by the value of the property, or that it is paid by legatees and devisees in proportions allocated to their respective inheritances."

The time at which the tax arises and the tax law becomes operative is discussed in the following cases:

In Shugars et al. v. Chamberlain Amusements Enterprises, Inc., 284 Pa. 200 (1925), the court said at page 205:

"Though commonly called a direct inheritance tax, yet, under the Act of [June 20,] 1919, [P. L. 521,] the thing taxed was the right of succession or the privilege of receiving at death the property possessed by a decedent either by will or under the intestate laws. The fundamental thought was to levy a toll against the passing of property of citizens going by reason of death to others in whatever light the taking may be viewed. . . . The tax was a sum to be made certain under varying conditions and subject to definite rules." And at page 206:

"The policy of the state to tax this property, however, has no relation to divisibility of estates. Bequests, descents, devises and gifts are the elements or incidents affecting rate, time and manner of assessment, when and by whom payable. It is immaterial to the State whether there has been a disposition of the property at death by will or otherwise; what the Commonwealth does is to fix all species of property of decedents with a tax,—'all estates and property, real, personal and mixed.'

"Notwithstanding the different situations, *the tax springs into life on the death of property owners;* eo instanti, it becomes seated on their estates. If, however, no provision has been made for the ascertainment of the tax, the mere announcement by statute of an intention to tax would not burden an estate."

In Commonwealth v. Presbyterian Hospital, 287 Pa. 49, it was held, as appears in the syllabus, that "The Commonwealth's right to receive an inheritance tax arises, if at all, immediately on the death of the decedent."

In Easby's Estate, 285 Pa. 60 (1926), it was said at page 64: "It is the rule that 'The status of the property at the instant of death must govern the question of tax, both as to liability and amount': Handley's Est., 181 Pa. 339, 346; Jackson v. Myers, 257 Pa. 104." See also Billings' Estate (No. 2), 268 Pa. 71, 75 (1920).

In Cochrane's Estate, 342 Pa. 108, where the Act of July 14, 1936, P. L. 44, relating to transfer inheritance tax on joint bank accounts, was under consideration, at page 111 the court said:

"What is actually acquired by the surviving joint tenant is the right to the immediate ownership, possession and enjoyment of the whole property and it is the accrual of this right which the statute properly taxes."

In Paul's Estate, 1 D. & C. 231, it was held that, under the Act of June 20, 1919, P. L. 521, direct and collateral inheritance taxes accrue immediately upon decedent's death, and the Commonwealth is entitled to a tax at 10 percent, notwithstanding a subsequent renunciation by a collateral legatee in favor of a lineal residuary legatee.

Under the foregoing statement of facts and the law applicable thereto this court fixed the amount of direct transfer inheritance tax on the net value of the estate passing to the surviving spouse under the intestate law at the rate of two percent and at the rate of 10 percent on the net value of the estate accruing under the will to the collaterals. These rates were fixed according to the rights of the distributees in the estate at the instant of the death of decedent.

The present contention of the Commonwealth and the reasons for its exceptions arise out of the fact that some days after the instant of decedent's death (at which time, it has been hereinabove said, all the rights and estates of the surviving husband, and the brothers and sisters of decedent, as well as the right of the Commonwealth to tax, became fixed) the surviving spouse

executed and delivered a paper which was called the election of the surviving spouse in which appear the following words:

"I . . . do hereby elect to take under the last Will and Testament of the said Lillie A. Bomberger, deceased, and hereby accept the same and forever relinquish my right, as surviving husband, to take against the said last Will and Testament of the said Testatrix."

The Commonwealth contends that this election constitutes a waiver by the surviving spouse of all interest, share, and estate in the property vesting in him under the intestate laws above recited. The document does not do that; it only relinquishes forever his right as surviving husband to take against the will. The intent and purpose of the Commonwealth's claim for tax is that the tax at the rate of two percent of the net value thereof, which had been fixed and determined as to time at the instant of testator's death, should now be increased to 10 percent not only upon the value of the net estate passing to collaterals under the will, but as well upon that accruing to them by action or transfer of the surviving husband. This contention on the part of the Commonwealth is illogical and untenable. The contention arises out of a misconception of the provision of section 23 of the Wills Act of June 7, 1917, P. L. 403, 20 PS §261 et seq.:

"When any person shall die testate, leaving a surviving spouse who shall elect to take against the will, such surviving spouse shall be entitled to such interests in the real and personal estate of the deceased spouse as he or she would have been entitled to had the testator died intestate: Provided, That nothing herein contained shall affect the right or power of a married woman, by virtue of any authority or appointment contained in any deed or will, to bequeath or devise any property held in trust for her sole and separate use."

The substantive rights which may be acquired by an election, that is, by taking against a will to receive as

under the intestate law, are set forth in the foregoing section 23(*a*). The subsequent subdivisions of section 23—(*b*), (*c*), (*d*), and (*e*)—indicate the procedure to make or to compel an election and the legal effects of such procedure, and are not directly involved in the present problem.

The provision of subsections (*a*), (*b*), (*c*), (*d*), and (*e*) of section 23, relating to the election of a surviving spouse, are effective and apply only to the provisions of wills which are made during coverture, and do not apply to wills made before marriage.

By the words of this section alone no property, either real or personal, is vested in or descends to a surviving spouse. By an election duly filed within a specified period the surviving spouse may acquire certain specified rights or may acquire a certain proportion of decedent's estate. By taking no action and filing no election, after a certain period, the surviving spouse may be presumed to have taken in accordance with the will; or may be cited to file an election, and the court may make a decree such as is indicated in the section. But in the absence of an election, or presumption of an election through lapse of time, or a decree of the court, the surviving spouse may not demand payment of or take possession of any portion of the decedent's property. Furthermore, all these provisions are in respect to the provisions of a will. The will is the lodestone around which all these rights and privileges and the election procedure revolve.

By the words of section 21 there is no statutory provision or requirement for any election of a surviving spouse as to a will made before marriage. Under this section, without any action or election on the part of a surviving spouse, upon the mere existence of certain specified facts, an absolute estate in a certain proportion of decedent's estate vests in the surviving spouse by operation of law. There is, therefore, no provision or statutory requirement for the execution and deliv-

ery of any election in the instant case. By the lapse of time, without filing an election, he could not be presumed to have elected in accordance with the will. He could not be cited to file an election. And pending the filing of an election, or any decree of a court upon any citation, he could not be prohibited or restrained from demanding or entering into the possession and enjoyment of the estate or inheritance, the title to which the law cast upon him at the instant of the death of decedent. The determination of his rights and estates did not revolve around any will, as in the case of an election under section 23, because as to him there was no will. He did not simply have a right or privilege by filing an election to secure certain proportionate parts of a decedent's estate, because such rights and estates were vested in him absolutely, with all the rights and privileges of an absolute ownership, into the possession and enjoyment of which he could immediately enter. He took under the intestate laws. This court never heard of an instance where one taking under the intestate laws filed or was required to file an election to take or to refuse to take an inheritance under the intestate laws.

Under the provisions of these two sections there is also a difference as to the quantity and proportion of an estate which is available to or vests in a surviving spouse. In the event of the revocation of a will by a subsequent marriage, where there are no children, the surviving spouse takes by operation of the intestate laws the sum of $5,000 and one half of the remainder. In the event of an election to take against a will executed after marriage, where there are no children, the surviving spouse does not receive the $5,000, but only one half of the estate.

Furthermore, if there are no children, and the will is revoked by a subsequent marriage, the surviving spouse receives the same share under the intestate laws whether he files an election to take against the

will or files no election at all. It cannot be said that, if the surviving spouse is entitled to $5,000 because as to him there is no will, if he inadvertently files an election to take against a will he will by such election deprive himself of the $5,000, because he is entitled to this $5,000 in the case of an actual intestacy.

Since, therefore, the rights and estates vest in the present surviving spouse under the provisions of section 21 of the Wills Act, which require no election on the part of the surviving spouse, and for the foregoing reasons under the facts of the instant case, it would be a useless, unnecessary, unrequired and absurd action for the surviving spouse to file any election, and any such election would be void. It could not revive or resuscitate the provisions of a void will, and, as a void instrument itself, in and by itself transfer interests or estates to others. It was void and of no legal effect for all purposes whatsoever, except possibly to express an intention on his part not to participate in the distribution of the estate.

As was said in Belzer's Estate, 54 Montg. 315, 318 (1938):

"Under Section 21 of the Wills Act of 1917, a testator who marries after making his will dies intestate as to the surviving spouse . . . for a spouse married after the making of a deceased spouse's will to elect to take against it, is a vain and futile act which can accomplish nothing. . . ."

Confirmation of this view of this case is found in the fact that the section of the Wills Act relating to the revocation of a will refers to two classes of persons: the one a subsequently-acquired spouse; and the other after-born children. After-born children receive their share in an estate upon proof of the facts, and no election need be filed. If no election is required as to one class, none should be required in the other.

In the instant case as to the surviving spouse there is no will. The only effective legal part of decedent's

will at the time of her death and thereafter was as to one half of her net estate which remained after the interest and share of the surviving spouse had been set apart, determined, and satisfied. As to this effective part of decedent's will and the property passing thereunder the present surviving spouse's election may be operative, but it cannot be operative as to him as to something which came to him outside of the testamentary disposition and by operation of law.

Again, if for purposes of argument it were conceded that the present election was made with the intention that this surviving spouse was satisfied to receive nothing from the estate, the intention was to benefit decedent's brothers and sisters, which was a matter between the surviving spouse and the surviving brothers and sisters alone, and not for the benefit of the Commonwealth, or whereby the Commonwealth acquired a right to claim and collect the tax at an increased rate. The Commonwealth's right to tax and its rate of tax were fixed by the legal status of the parties and their relationship to decedent at the instant of decedent's death.

Apparently at a time later than the execution of the present election, it was realized that the simple election, in the manner and form in which it was executed, would not legally transfer the estate of the surviving husband to the brothers and sisters. Therefore, formal legal assignments, transfers, or deeds were prepared, whereby the surviving husband did sell, assign, transfer, grant, and convey to decedent's brothers and sisters all the property formerly belonging to his wife which came by operation of law to him upon her death. But ,to the extent that the brothers and sisters received property under these documents, they received title thereto from the surviving spouse and not under the will of their sister. Whatever they received under the will of the sister, they received subject to a transfer inheritance tax at the rate of 10 percent; but what they

received from the surviving husband they received as purchasers from him, and subject to the payment of the two percent tax due by him to the Commonwealth.

This court cannot agree with the Commonwealth's argument that the decision in the present case must be controlled by Lintner's Estate, 41 Lanc. 150, affirmed in 297 Pa. 428 (1929). In that case a woman, in a will dated November 30, 1926, devised her estate to Charles W. Lintner, whom she married on January 25, 1927. She died childless on May 28th in that year, whereupon the will was probated and the surviving husband claimed the entire estate. Collateral heirs contended that the will was revoked by the subsequent marriage (section 21 of the Wills Act of June 7, 1917, P. L. 403), and accordingly the estate should be distributed under the intestate laws, in which event they would participate. The court at page 431, referring to section 21 of the act, said:

". . . the statute does not contemplate that the will of the woman subsequently married shall be revoked absolutely, but only pro tanto as regards the husband . . . The provision was plainly inserted for the benefit of the survivor, and is not to be so construed as to deprive him of benefits conferred, unless he so elects. In the present case, he has asked for an award as the will directs, and the orphans' court correctly directed the net balance of the estate be given to him." At page 430 of the report the court referred to the right of election which the surviving spouse might make under section 23 of the Wills Act, to take against the will and thus secure the interest in the real and personal estate of the deceased as if she had died intestate, and said: "This statutory regulation was intended to guard the rights of the survivor in case the decedent attempted to dispose of the estate in a manner which deprived him of the benefits secured by the intestate laws, and was enacted for the protection of his interests. If the devises and bequests under the will were greater than the por-

tion awarded in case of intestacy, the statute did not require the husband to accept a less liberal provision than that made by the testatrix."

In the Lintner case the contest was between the surviving spouse as sole beneficiary under the will and the collaterals who claimed, as has been said, that the will was revoked by the subsequent marriage not only as to the surviving spouse, but entirely, so as to entitle them to participate. This contention was answered by the court at page 430: ". . . the written disposition executed prior to marriage was valid as to all the world except the survivor, and advantage could be taken by him of its terms in the absence of after-born children."

The practical effect of this decision is that disappointed collaterals under the facts of this case could not invoke the revocation provision of section 21 of the act for their benefit. In the Lintner case there was no contention as to the rates or amounts of transfer inheritance tax due to the Commonwealth. True, both sections 21 and 23 of the Wills Act entered into the discussion of the problems before the court, but only insofar as they enabled the court to come to a decision that the surviving spouse took the whole estate under the will. Nor in the Lintner case did the decision rest on the fact of the absolute estate vesting in the husband under the act revoking prior wills by a subsequent marriage. Such discussion was unnecessary in that case to arrive at the decision that the surviving husband took the whole estate under the will.

In the instant case the problem is one of tax liability. The provisions of the will are the reverse of the provision of the Lintner will giving the whole estate to the surviving spouse: in this case it was given to the collaterals, with nothing to the spouse. There is here no contest between the surviving spouse and the collaterals, for he is satisfied that they should receive the estate. But the instant question is from whom do they receive it. That question is not answered by the Lintner case.

Nor does the Lintner case decide the transfer tax liability, which undoubtedly was settled on a two percent basis under the will and the relationship of the devisee to decedent. In the instant case, however, the right to tax accruing to the Commonwealth is not entirely established by the relationship of the parties taking under the will of the testatrix, but in addition by the relationship of the surviving spouse upon whom, by the absolute revocation of the will by the subsequent marriage, was cast a share of the estate under the intestate laws. For these reasons the present decision cannot be controlled by the Lintner case. The decision herein made, however, is not entirely inharmonious with the principles discussed in that case, although the points at issue are entirely different.

A balance shown by an executor's account was brought before this court for distribution to those entitled thereto, subject to the determination of the amount of tax due to the Commonwealth and the deduction thereof from the respective shares of the distributees. This adjudication is first made on the basis of the legal status of the parties interested, which was created at the time of decedent's death and thereafter was modified by subsequent actions of the parties interested as by assignments, transfers, attachments, etc. The court awarded to the collateral legatees under the will the money which they were entitled to receive, namely the net estate after deducting the share of the surviving husband under the intestate laws—$5,000 and one half of the remainder of the net estate—and then awarded to them as transferees of the surviving husband that share.

In determining the amount of the transfer inheritance tax due the Commonwealth, the court ignored the election to take under the will and determined what the value of the surviving husband's interest in the estate would be in the absence of the election, and calculated the amount of tax on that sum at two percent, and the

tax on the remainder of the estate at 10 percent. The court then awarded the amount which the husband, in the absence of the election and transfer, would have been entitled to receive, less the two percent tax, together with the remainder of the estate, less the 10 percent tax, to the residuary legatees under the will.

This court arrived at this determination under section 45 of the Act of June 20, 1919, P. L. 521, 72 PS §2461, providing:

"The words 'estate' and 'property,' wherever used in this act, except where the subject or context is repugnant to such construction, shall be construed to mean the interest of the testator, intestate, grantor, bargainer, or vendor, passing or transferred to the individual or specific legatee, devisee, heir, next of kin, grantee, donee, or vendee, not exempt under the provisions of this act, whether such property be situated within or without this Commonwealth."

The "estate" of testatrix passed partly under the will and partly under the intestate laws; and as to the husband's share which he transferred to the collaterals they did not take this from the testatrix.

The facts in Frank's Estate 9 Pa. C. C. 662, are somewhat the reverse of the facts in the instant case, in that an intestate left to survive him no issue, but a widow and a sister. The sister conveyed by deed her interest in said real estate to the widow. The question arose as to the liability of the real estate for the payment of the tax. At page 663, Hanna, P. J., said:

"The release or conveyance by a devisee, legatee or distributee, after the devise, legacy or distributive share has once vested, will not deprive the commonwealth of the collateral inheritance tax. *The tax accrues immediately upon the death of the testator or intestate.* And payment cannot be evaded by a conveyance or assignment to one whose right of succession is not subject to the tax. A devisee or legatee may waive all claim and refuse the bounty of a testator, or to share

as a distributee, but if he be a collateral heir or stranger to the blood of testator, the tax remains due and payable." (Italics supplied.)

See also Paul's Estate, 1 D. & C. 231, heretofore reviewed.

This court, by citation of precedent or argument, has not been convinced of any error in its determination of the transfer inheritance tax due and awarded to the Commonwealth.

The exceptions filed are discharged and the adjudication filed is now absolutely confirmed.