## Bertin's Estate.

*Jurisdiction—Orphans' Court—Decedent's estates — Ancillary administration—Wills—Construction—Foreign law.*

1. Upon the adjudication of an ancillary administrator's account, the Orphans' Court has a right to exercise its discretion in deciding whether it will distribute the fund itself among the parties entitled to it or remit it to the forum of the domicil for that purpose.

2. Upon the adjudication of the account of an ancillary administrator c. t. a., a claim was presented to the accountant of a legacy under a codicil to the will. It appeared that testatrix was married in Pennsylvania in 1890 to a citizen of France, and after that time resided in and was a citizen of France until her death in February, 1910. Claimant was a citizen of this country, went to Paris in 1892 and remained there until the autumn of 1911, except about seven months in the year 1905, which she spent in this country. After her return to Paris, she was employed by the testatrix on a salary for eighteen months. She was never a citizen or resident of the State of Pennsylvania. The interpretation of the French law applicable to distribution of decedents' estate was necessary for a proper determination of the claim. Claimant called as a witness a member of the New York Bar familiar with the English and French languages, who translated the will and codicil executed in French by the testatrix, and also certain provisions of the French Code regulating the disposition of decedents' estates. The claimant also called a French barrister to prove the French law as to the civil rights of husband and wife where they have been married under the law of separate estates, and the law as to wills and codicils which determined the validity of the claimant's legacy. The respondent offered to produce similar expert testimony to sustain her contention and to defeat the claimant's claim. The auditing judge held that the claimant would have to

establish the validity of her legacy in the domiciliary jurisdiction before payment would be ordered in the ancillary proceedings, and directed that a fund sufficient to meet the claimant's legacy should be retained in the hands of the accountant to await the decision of the French court. *Held*, no error.

Argued March 25, 1914. Appeal, No. 365, Jan. T., 1913, by Julia Acly, from decree of O. C. Philadelphia Co., July T., 1911, No. 222, dismissing exceptions to adjudication in Estate of Helen Malcolmson Serrill Bertin, deceased. Before BROWN, MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Exceptions to adjudication. The auditing judge, ANDERSON, J., stated the facts in part as follows:

The testatrix, who was by birth an American citizen, had intermarried with a Frenchman, M. Bertin, and thus became a citizen of France. The marriage was under the French law of separate estates, by which married women retain the control of their property after marriage. She died domiciled at Paris, France, on February 29, 1910, and left her surviving her said husband and a daughter, Evelyn Serrill Bertin, and a last will and testament with codicil thereto, both dated July 29, 1904, and duly admitted to probate in this jurisdiction, and upon which ancillary letters of administration c. t. a., issued to the accountant July 8, 1910.

By her will, after reciting that she had, by deed bearing even date therewith, made a donation of the whole of her estate to her husband with the stipulation that in case of the existence of children at the time of the distribution of her estate the donation would be subject to the reduction required by French law, and stating "My testament which I am about to make has therefore no other object than to provide for the case in which I should die a widow without children," she gave, inter alia, to Julia Acly the sum of one hundred and twenty-five thousand francs.

By "codicil to my testament for the case in which I

should die without having made provision concerning my daughter," she provided that Julia Acly should have the care of her daughter and direct her education, and after providing for the payment of her expenses, etc., she gave Miss Acly one hundred and twenty-five thousand francs to be paid either at the death or on the day of the marriage of the said daughter with interest at legal rates from the date of her death to the day of the death or marriage of her said daughter.

At the audit claim was made on behalf of Miss Julia Acly for payment of the said legacy of one hundred and twenty-five thousand francs with interest thereon, according to the terms of the codicil, out of the fund now accounted for in this jurisdiction. It was shown that the testatrix's daughter had after testatrix's death been declared a major or of age by her father under the provisions of French law before attaining the age of twenty-one years, and that she was married on December 10, 1912. It was also shown that all the debts of the testatrix in France had been paid.

Objection to the claim, however, was made on the ground that the legacy in the will was dependent upon the testatrix dying a widow and without children, and that as testatrix was survived by her husband and child the legacy under the will never took effect; and that the legacy under the codicil was predicated upon the legatee's having the care and education of testatrix's daughter, and that she did not perform this duty. It was further objected that under the circumstances of the case (the husband and child having both survived testatrix), the legacy was invalid under the French law. Counsel for the daughter claimed the entire fund on her behalf as universal heir under the French law, and both he and counsel for the accountant asked that the fund be remitted to the domicile for distribution under the laws of France, where all claims might be properly and definitely adjudicated.

It appeared that the claimant, who was a native of the

State of New York, had resided for some years in New Jersey, went to France, came back to New Jersey, and subsequently at the instigation of the testatrix returned to France and acted as governess for her daughter for some years, and then established herself in Paris taking apartments there for the purpose of receiving and edu: cating young American ladies who might come to that country for that purpose. She was in France prior to the making of the will, at the time of its execution, resided there at the time of testatrix's death, and for some time thereafter. She subsequently came back to New Jersey and reestablished a residence in that state, where she now resides.

The auditing judge decided that the fund for distribution should be remitted to the jurisdiction of the domicile for such action as the court of France might take as to the claim, subject however, to an agreement by counsel representing the universal heir that a fund sufficient to meet the legacy should be retained in the hands of the accountant to await the determination of the question by the French court.

Exceptions to the adjudication were dismissed by LAMORELLE, J. The accountant appealed.

*Errors assigned* were in dismissing exceptions to the adjudication and the decree confirming the adjudication.

*Clement B. Wood* and *Charles E. Morgan,* for appellant.—Prior to the Act of March 31, 1905, P. L. 91, where there were no creditors of the decedent remaining unsatisfied at the decedent's domicile, the courts in ancillary proceedings in Pennsylvania determined disputed questions of foreign law, and made distribution to claimants appearing in the character of creditors, legatees or next of kin, including claimants who were citizens of sister states of the union: Dent's App., 22 Pa. 514; Del Valle's App., 5 Atlantic 441 (affirming 17 W. N. C. 30); Ficken's Est., 16 Philadelphia 269; Fox's Est., 15 Dis.

Repr. 470; Weaver's Est., 4 Pa. D. R. 260; Parker's. App., 61 Pa. 478; Welles's Est., 161 Pa. 218.

Under the Act of 1905 and the Federal Constitution, a citizen of another state is entitled to claim the privilege granted by the Act of 1905 to citizens of Pennsylvania or presenting his claim as legatee or creditor and of receiving distribution in the ancillary proceeding in Pennsylvania, instead of being sent to a foreign country to have his right as legatee or creditor adjudicated: Loftus v. F. & M. N. Bank, 133 Pa. 97; Chambers v. Baltimore & Ohio R. R. Co;, 207 U. S. 142; General Oil Co. v. Crain, 209 U. S. 211; International Text Book Co. v. Pigg, 217 U. S. 91; Blake v. McClung, 172 U. S. 239; Cole v. Cunningham, 133 U. S. 107; Harris v. Balk, 198 U. S. 215; Morgan v. Neville, 74 Pa. 52; Clark v. Toby Valley Supply Co., 14 Pa. C. C. 344; Knight v. West Jersey Railroad Co., 108 Pa. 250.

*H. Gordon McCouch,* of *Dickson, Beitler & McCouch,* with him *Edward Hopkinson, Jr.,* for appellee.—It was a proper exercise of the discretion vested in the Orphans' Court to refer the determination of the validity of appellant's claim to the court of the domicile of testatrix: Brown v. Brown, 1st Barb. Chancery 189; Harlan's Est., 16 Pa. County Court Reports 51; Ruebsam's Est., 26 W. N. C. 311; Lawrence v. Kitteridge, 21 Conn. 576.

OPINION BY MR. JUSTICE MESTREZAT, May 4, 1914:

We agree entirely with the conclusion of the learned court below, and that it entered a proper decree under the facts and law applicable to the case. The question involved is not one of jurisdiction, but of the proper exercise of the discretionary power of the court to require the claimant, under the facts, to establish the validity of her legacy in the domiciliary jurisdiction before the ancillary jurisdiction will direct its payment out of the fund for distribution in this proceeding. In Dent's Appeal, 22 Pa. 514, 520, it is said: "But it must be re-

membered that this is not a question of jurisdiction, but merely one of judicial discretion........From these authorities it is clear that the Orphans' Court had a right to exercise its discretion in deciding whether it would distribute the fund itself, among the parties entitled to it, or remit it to the forum of domicile for the purpose. And the question before us is, whether there has been such an unwise exercise of that discretion as to justify a court of review in reversing the decree."

In the exhaustive opinion filed by the learned auditing judge it is said, inter alia: "It would seem to the auditing judge, therefore, after careful consideration of the authorities, a proper exercise of discretion to require that this matter be referred to the courts of the domicile so that an authoritative decree might be obtained under that law as to the rights of the claimant, especially in view of the fact that both at the time of the making of the will and of the testatrix's death, and for some time thereafter, the present claimant was resident, if not domiciled, in Paris, where the will was probated and by the public probate was put upon notice of its contents and could without extra trouble and costs have made her claim to intervene in the courts of the domicile. Her present situation as a resident of this country grows out of her voluntary act in leaving the place of the testatrix's domicile since her death, and the hardship if there be any would seem quite as grievous upon the universal heir to defend against the claim here."

The facts of this case, as pointed out in the adjudication, clearly justified the action of the court below. Madame Helen Malcolmson Serrill Bertin, the testatrix, since her marriage in Philadelphia in 1890 had resided in and was a citizen of France, where she died in February, 1910. Julia Acly, a citizen of this country and the claimant in this proceeding, went to Paris in 1892 after the death of her parents, and remained there engaged most of the time in educational work until the autumn of 1911, except about seven months in the year 1905 which

she spent in this country. After her return to Paris she was employed by the testatrix on a salary for eighteen months. She was never a citizen or resident of this State. It is apparent that the appellant had the opportunity to have her claim adjudicated by the proper domiciliary tribunal of France while she was a resident of Paris. The law of the domicile governs the distribution of a decedent's personal estate, and the validity of the appellant's legacy must, therefore, be determined under the law of France. Instead of asserting her claim in the forum of the domicile, she left that jurisdiction and came here to have our courts interpret the French law applicable to the distribution of decedents' estates. We are not asked to construe the law of a sister state, written in our own language, with which the courts of the other states are more or less familiar. This we have done and in the exercise of a proper discretion will continue to do in the distribution of a decedent's estate under ancillary proceedings. Here, the appellant's claim must be adjudged by the French Code, which necessarily requires a knowledge of the French language as well as of the French law, or that the court interpret a translation instead of the original instrument. Courts are not presumed to know a foreign language sufficiently well to translate it without the aid of an interpreter and adjudicate the rights of litigants depending on the construction of a legal instrument written in the language. The claimant called as a witness a member of the New York Bar, familiar with the English and French languages, who translated the will and codicil executed in French by Madame Bertin, the testatrix, and also certain provisions of the French Code regulating the disposition of decedents' estates. She also called a French barrister to prove the French law regulating the civil rights of husband and wife where they have been married under the law of separate estates, and the law as to wills and codicils which determines the validity of the appellant's legacy. The appellee offered to produce sim-

ilar expert testimony to sustain her contention and to defeat the appellant's claim. Had the court determined the validity of the appellant's legacy under the testimony, the rights of the parties would have depended, not on the court's interpretation and application of the law ruling the case, but on the court's opinion as to which of the witnesses correctly translated the will and codicil and correctly interpreted the French Code. The necessity of remitting the appellant's claim to the courts of the domicile for an authoritative adjudication is too apparent, we think, to require further discussion.

The decree entered by the Orphans' Court does not offend the Act of March 31, 1905, P. L. 91. It retains a fund sufficient to meet the appellant's legacy in the hands of the accountant to await the decision of the French court. When a decision has been made, the court of ancillary jurisdiction will distribute the fund to the party legally entitled thereto. The act provides that the personal representative "shall not be required to deliver to any foreign executor or administrator any fund......
But such fund shall be distributed under the direction of the Orphans' Court......." This was the practice in the Orphans' Court at the date of the enactment, and hence the act was simply declaratory of the existing law. There is nothing in the act which prohibits the Orphans' Court from withholding distribution until the court of the foreign domicile has determined the validity of the claim under the laws of that jurisdiction. The ancillary court may proceed at once to determine the legality of the claim and make distribution, but the act does not require it. If the court should be of opinion that a proper distribution of the fund can only be made after an adjudication of the validity of the claim by the courts of the domicile, the postponement of the distribution for that purpose would be the exercise of a discretion not condemned by the statute. The legislature intended by this enactment to protect citizens of the State by requiring our courts to make distribution of the fund in the

hands of the ancillary administration, but it did not intend to compel the court to distribute the fund to a legatee until the validity of the legacy under the law of the domicile was duly established. This is all the decree of the court below requires, and it cannot be successfully attacked by the claimant, whether she be a citizen of this or any other state of the Union.

Decree affirmed.