## Hopkins' Estate

Before Van Dusen, Stearne, Sinkler, Klein, and Bok, JJ.

*Richard Hay Woolsey, George F. Lowenthal, Isaac R. Hirsch, I. Irving Tubis, J. Lawrence Wetherill, Joseph C. Henry,* and *Frank F. Truscott,* of *Bell, Truscott, Henry & Sutton,* for exceptants.

*Ballard, Spahr, Andrews & Ingersoll* and *MacCoy, Brittain, Evans & Lewis,* contra.

BOK, J., December 24, 1936.—None of us should be called upon to audit this account as it stands. We cannot pass upon payments made in New Jersey, and the account is full of such items. It should be limited to those matters which took place in Pennsylvania and relate to Pennsylvania assets. The New Jersey account should similarly be limited to those matters which took place in New Jersey and relate to New Jersey assets: In re Healey's Estate, 4 N. J. Misc. 785. The particular vice of the account before us is that in the principal account the accountant charges herself only with Pennsylvania assets but credits herself with New Jersey and Pennsylvania payments. She has also included many credit items which relate to the general rather than to the ancillary administration.

The auditing judge has referred the whole estate back to New Jersey. The petition for distribution reveals that there are Pennsylvania claimants. They are creditors, attorneys and others who have incurred ancillary administration expenses here, and the accountant herself, who claims as accountant and as legatee. The general rule is that they should be taken care of, and is thus stated in Middleby's Estate, 249 Pa. 203, 207:

"We recognized the principle in Laughlin & McManus v. Solomon, 180 Pa. 177, 179, where we said in referring to cases on ancillary administration that they 'uniformly hold that the duty of the ancillary administrator here is to account to domestic creditors, and, after they are satisfied, to pay over the balance to the primary or domiciliary administrator.' "

The question before us is whether this court has dis- *cretion to disregard this rule and remit Pennsylvania claimants to the domicile. That we have a certain discretion appears to be well established. In Easby's Estate, 285 Pa. 60, the court said:

"But the orphans' court has a right to exercise a discretion in determining whether it will distribute the fund itself among the parties entitled thereto or remit it to the forum of the domicile for the purpose of distribution there: Ibid; Bertin's Est., 245 Pa. 256."

The auditing judge held that this discretion enabled him to remit the whole estate, claimants and all, to the domicile. We do not believe our discretion extends so far. We must take care of Pennsylvania claimants, and when we have done so, we have discretion to remit the balance to the domicile or to retain it and distribute the entire fund. This distinction appears in Dent's Appeal, 22 Pa. 514, 520, where the court said:

"That the foreign administration is subservient to the rights of *other claimants* as well as *creditors*, resident within the foreign jurisdiction, is apparent from what has already been said; but the same principle is distinctly affirmed by this Court in Mothland v. Wireman, 3 *Pa. Rep.* 188. It was there held, after a careful review of the authorities, that 'the administrator here, although admitted to be but an auxiliary administrator, is bound to remit the assets to the administrator of the domicile, *only in case there are no domestic claimants in the character of creditors, legatees,* or *next of kin;* but that *where these appear*, the assets are to be retained for administration: 3 *Pa. Rep.* 188. According to the case last cited, the absence or presence of domestic claimants upon the fund determines the action of the Court under the comity of nations. But it must be remembered that this is not a question of jurisdiction, but merely one of judicial discretion. The right to retain the fund, and the jurisdiction to distribute it among the parties entitled, undoubtedly exist in the tribunals of the country under whose author-

ity it was collected. This principle was acknowledged in Harvey *v*. Richards, 1 *Mas. R.* 408, and it was correctly held, in that case, that although "the property was to be distributed according to the *lex domicilii*, national comity did not require that the distribution should be made abroad." From these authorities it is clear that the Orphans' Court had a right to exercise its discretion in deciding whether it would distribute the fund itself, among the parties entitled to it, or remit it to the forum of domicile for the purpose. *And the question before us is, whether there has been such an unwise exercise of that discretion as to justify a Court of review in reversing the decree.*

*"It is conceded that where there are domestic claimants upon the fund, their rights must be protected here, and they must not be put to the expense or dangers of following it into a foreign jurisdiction."* [Italics ours.]

In examining the cases where this discretion has been exercised, we find that it is either in favor of retaining the fund here and against remitting it, or else there were no local claimants. Thus, in Easby's Estate, supra, the question was whether or not Pennsylvania assets of a nonresident decedent were subject to the collateral inheritance tax of this State, the Commonwealth contending that they had been domesticated because the orphans' court had used its discretion to make final distribution to the heirs here. The rights of claimants were not involved.

In Middleby's Estate, supra, there were creditors here and in Massachusetts, the domicile. The orphans' court awarded payment to the creditors here and remitted the balance to the domicile. The question for decision was whether a foreign creditor could prosecute its claim here in the ancillary proceedings. The court said, at page 207:

"While the general rule is, as stated in the cases referred to, that where an ancillary administration has been raised in this State the fund in the hands of the accountant will be applied to the payment of domestic cred-

itors and the balance remitted to the domiciliary juris-diction, *the court may, in its discretion, if the facts war-rant, make distribution of the entire fund.* In the recent case of Bertin's Est., 245 Pa. 256, it was held: 'Upon the adjudication of an ancillary administrator's account, the Orphans' Court has a right to exercise its discretion in deciding whether it will distribute the fund itself among the parties entitled to it or remit it to the forum of the domicile for that purpose.' This was in effect decided in Dent's App., 22 Pa. 514; Welles's Est., 161 Pa. 218, and other cases where it appeared there were *no domiciliary creditors to participate in the surplus after the payment of domestic creditors,* and where the distributees asked that distribution be made in order to avoid delay and ex-pense of remitting the fund to the forum of the domicile. In the case in hand, the debts of the decedent owing to Pennsylvania creditors amount approximately to $22,000, and to non-Pennsylvania creditors approximately to $17,000, and we can see no reason why the general rule should not, as suggested by the learned court below, be applied in this case." [Italics ours.]

In Bertin's Estate, 245 Pa. 256, 262, there were no local claimants. Decedent died in Paris, where her will was probated. She gave a legacy to a friend who also lived in Paris but who later came here and tried to col-lect the legacy in ancillary proceedings. The orphans' court remitted the fund to the domicile, and the Supreme Court very clearly described the reason as follows:

"The law of the domicile governs the distribution of a decedent's personal estate, and the validity of the appel-lant's legacy must, therefore, be determined under the law of France. Instead of asserting her claim in the forum of the domicile, she left that jurisdiction and came here to have our courts interpret the French law applicable to the distribution of decedents' estates. *We are not asked to construe the law of a sister state, written in our own language, with which the courts of the other states are more or less familiar. This we have done and in*

*the exercise of a proper discretion will continue to do in the distribution of a decedent's estate under ancillary proceedings.* Here, the appellant's claim must be adjudged by the French Code, which necessarily requires a knowledge of the French language as well as of the French law, or that the court interpret a translation instead of the original instrument. Courts are not presumed to know a foreign language sufficiently well to translate it without the aid of an interpreter and adjudicate the rights of litigants depending on the construction of a legal instrument written in the language. The claimant called as a witness a member of the New York Bar, familiar with the English and French languages, who translated the will and codicil executed in French by Madame Bertin, the testatrix, and also certain provisions of the French Code regulating the disposition of decedents' estates. She also called a French barrister to prove the French law regulating the civil rights of husband and wife where they have been married under the law of separate estates, and the law as to wills and codicils which determines the validity of the appellant's legacy. The appellee offered to produce similar expert testimony to sustain her contention and to defeat the appellant's claim. Had the court determined the validity of the appellant's legacy under the testimony, the rights of the parties would have depended, not on the court's interpretation and application of the law ruling the case, but on the court's opinion as to which of the witnesses correctly translated the will and codicil and correctly interpreted the French Code. The necessity of remitting the appellant's claim to the courts of the domicile for an authoritative adjudication is too apparent, we think, to require further discussion."

In Dreer's Estate, no. 3067 of 1933, in this court, Judge Stearne awarded the fund to the domicile only after local claimants had been paid, and based his decision on jurisdictional rather than discretionary grounds, saying:

"The law with respect to this question of jurisdiction is well settled. The rule is that assets will not be transmitted to the domicile when there are domestic claimants within this jurisdiction of ancillary administration: Mothland v. Wireman, 3 P. & W. 185, at page 188; Dent's Appeal, 22 Pa. 514; Parker's Appeal, 61 Pa. 478; and Welles's Estate, 161 Pa. 218.

"Ancillary letters are required by our laws for the protection of domestic claimants, in order that Pennsylvania assets may be reached by them through the Courts of our State: Viosca's Estate, 197 Pa. 280, at page 285."

In Lovall's Estate, 36 Montg. 106, the balance was awarded to the primary administrator in Maryland, the court saying: "As already stated, no Pennsylvania creditor has presented claim, and the next of kin of the decedent does not ask the fund to be awarded to him."

In Garrett's Estate, 33 Montg. 75, the fund was awarded by the Orphans' Court of Montgomery County, in ancillary proceedings, to the legatee who also lived in that county. This award was made for the reason that there were no creditors here or in the domicile, and the court said: "The court, therefore, has the discretion to make distribution of the entire estate in the hands of an ancillary administrator, or executor, if there are no creditors of the domicile", citing Bertin's Estate and Middleby's Estate, supra.

The A. L. I. Restatement of Conflict of Laws, §522, reads as follows:

"A court of ancillary administration will, *after payment of claims*, exercise its discretion as to the disposition of the balance of the local personal estate; it may order its administrator to transmit the balance of the personal estate to the court of administration at the domicile of the decedent; it may order him without such transmission to distribute the balance to the persons who are entitled to it; or it may order him to transmit part and distribute the rest."

The Pennsylvania annotation of this section contains such an exhaustive list of the authorities that it seems unnecessary to add others here.

No case that we can find or that has been cited to us holds or even infers that we may send Pennsylvania creditors to a foreign forum. The use of the word "discretion" does not refer to such a situation, no matter how practical or desirable a solution this procedure might afford. It is not a question of our having such discretion and of failing to find a case in which it has been exercised that way: the cases all deal with situations where there are no local creditors or where distribution is to be made after local creditors have been paid. The reason for discretion in distribution is well illustrated in Garrett's Estate, supra, for there were no creditors either in Montgomery County or in New Jersey, and the residuary legatee lived in Montgomery County. It would be useless to remit the fund to New Jersey for no other purpose than to have the New Jersey court order its payment back to the resident of Montgomery County. Discretion relates solely to alternative methods of final distribution, not to the alternative of adjudicating or remitting Pennsylvania claims.

It is, true, as the auditing judge says, that the two administrations of this estate are interwoven. The same person is (or was, until she was removed in New Jersey) executrix in both. So far as this mesh is reflected by the account, there must be a restatement, for it is her duty to unravel the threads and report her Pennsylvania stewardship alone. It appears that all but a small part of decedent's property was located here at his death, and it is natural to find the greatest activity and the largest number of claims here. Beyond that, the ancillary executrix and the attorneys who represent her here are officers of this court, and we feel, in addition to the law, that we should serve them here and not refer them to a foreign jurisdiction. There are creditors in Pennsylvania of both decedent and the ancillary executrix: the claims of the

former alone amount to $3,718.72, according to the petition for distribution. There are also administration creditors in New Jersey, but the great majority of both assets and claimants are local to us, a fact which no court in New Jersey would be likely to regard with welcoming enthusiasm.

Counsel for the New Jersey creditors argues that the insolvency of the estate is a ground for remitting it to the domicile. We cannot say that such insolvency exists. It may have existed when the audit was held, but most of the assets are stocks, and the stock market has increased since the audit to such an extent that the estate may now be solvent. Certain of the briefs refer to this as being probably true. Even if the estate were insolvent, however, we do not feel that such a condition would govern, for local creditors would be entitled to a proportionate part of their claims.

The auditing judge awarded the accountant costs and expenses, including counsel fees, for the mechanical work of preparing, filing, advertising, and auditing the account. This still leaves open the accountant's claim for commissions and counsel's claims for fees relating to the preservation of the assets here, and also the claims of local creditors of decedent and of the ancillary administration. These were expressly remitted to the domicile and are the matters which we feel should be adjudicated by this court.

We feel that the correct procedure would be that adopted by Judge Stearne in Dreer's Estate, supra, namely, to adjudicate the claims of Pennsylvania creditors and administration claimants in this court, to award distribution to them and to Pennsylvania legatees, if any, but to suspend payment thereof until it has been judicially determined in New Jersey at the settlement of the domiciliary administrator's account how much of the fund should be remitted to the domicile to satisfy the claims of New Jersey creditors and expenses.

To sum up the legal position, which is the present crux of the difficulty, this court has no discretion to remit

Pennsylvania creditors and their claims to New Jersey, whether these be creditors of decedent or of the ancillary executrix, which include lawyers and the accountant's own claim for commissions. These must be proved and adjudicated here. When this has been done, our discretion begins, and not before.

The auditing judge concurs in this opinion.

The record is remitted to the auditing judge for further hearing and consideration in accordance with this opinion, and the accountant is directed to restate the account.