## Grimani Estate

Exceptions before Pawelec, Adm. J., Silverstein, Jamison, Klein and Shoyer, JJ.

*Joseph N. Bongiovanni, Jr.*, in propria persona.

*Bernard Glassman* and *Abraham Mora*, for Angiolina Coco Romita.

*Albert B. Gins*, for Anna Maria Crosara.

*Edmund P. Butler*, amicus curiae.

*Richard L. Colden, Jr.*, for Commonwealth.

OPINION BY JAMISON, J. MARCH 21, 1980:

Nino Grimani died in Rome, Italy, on September 9, 1975, leaving a will, executed in Rome, dated November 10, 1974. He was survived by his wife, Matilda Coco Grimani. One Anna Maria Crosara, a resident of Venice, Italy, claims that she is the daughter of the decedent by a prior marriage, and is entitled to one-half of the estate under Italian law.

On February 17, 1977, more than a year and a half after Nino Grimani's death, letters of administration, c.t.a. were granted by the Register of Wills of Philadelphia to Joseph N. Bongiovanni, Jr., Esquire, who is also counsel for the estate. Proof of publication of the grant of letters was submitted and is attached hereto.

No official transfer inheritance tax has been paid. By letter from the Department of Revenue of the Commonwealth of Pennsylvania, dated January 23, 1978, it is acknowledged "that the decedent owned no realty or tangible personal property with its situs in Pennsylvania. This being so, there is no inheritance tax due." Counsel informed the department and this court that all of the decedent's property was located in Switzerland at the time of his death. ***

Mr. Bongiovanni relies upon Section 3151 of the PEF Code as authority for offering the will of Nino Grimani for probate in Philadelphia. Section 3151 provides in pertinent part:

> "If the decedent had no such domicile in the Commonwealth, letters testamentary or of administration may be granted by the Register of any county wherein property of the estate shall be located."

The appropriate statute, if applicable, is Section 3131 of the PEF Code which adopts verbatim §301 of the Register of Wills Act of 1951, P.L. 638, 20 P.S. §1840.301, which evolved from §4 of the Register of Wills Act of June 7, 1917. Section 3131 provides:

> "If the decedent had no domicile in the Commonwealth, his will may be probated before the register of any county where any of his property is located."[1]

---

1. The legislative history of this statute will be hereinafter considered.

The inventory filed by the administrator, c.t.a. lists the following assets:

Real Estate in Pennsylvania: None

Personal Property:

| | | |
|---|---|---|
| 1. | Cash in Dollar Account, Swiss Bank Corp., Zurich, Switzerland | $ 58,655.52 |
| | Securities in Dollar Account, Swiss Bank Corp.: | |
| 2. | $33,000 (face) Siemans Western Finance NV 9% 1985.... | 33,090.66 |
| 3. | $78,000 (face) Grand Metropolitan, Ltd. 9¼% 1-1-86 .... | 62,415.57 |
| 4. | ECU 10,000 7¾% Eurofina Ste. Europ. pur le fin. de Material Ferroviaire Basle 1971-81, with currency option | 12,081.24 |
| 5. | Cash in Deutschmark Account Swiss Bank Corp. ........... | 31,386.98 |
| 6. | Cash received from Angelina Coco Romita ..................... | 1,200.00 |

$198,829.87

Decedent owned no realty in Pennsylvania. The principal part of his estate consisted of currency located in Swiss bank accounts and European bonds. The accountant submitted a xerox copy of a letter from Delia Veneis of New York, dated February 7, 1977, one week before the issuance of letters, which reads:

"Dear Mr. Bongiovanni
    As per our conversation, I am sending you the check of $1200.00 for Signora Lilly Romita of Rome.
    Good wishes,

                                                Sincerely
                                                /s/ Veneis Delia"

This sum corresponds to Item 6 of the inventory: "cash received from Angelina Coco Romita." There is no indication whether the $1,200 (less than 1% of the estate) was a cash asset of Mr. Grimani or a sum of money sent to counsel to facilitate the administration of the estate in Philadelphia.

The testator owned no property in Philadelphia at the time of his death. Letters of administration were not applied for by the administrator, c.t.a. until he received $1,200 from Rome via New York from Angelina Coco Romita (which appears to be a retainer) more than one and a half years after the death of Nino Grimani.

Under Section 4 of the Register of Wills Act of June 7, 1917, P.L. 415, the will of a non-resident of Pennsylvania could be probated by the register of wills only in ". . . the county where the principal part of the goods and estate of decedent

within this Commonwealth shall be . . ." Section 301 of the Register of Wills Act of June 28, 1951, P.L. 638 was enacted to eliminate questions of where the "bulk" of the assets of the decedent were located. It also broadened the power of the register of wills to grant letters in a county where *any* property of the non-resident decedent is located. The comment to §301 of the Register of Wills Act indicated that power to grant letters in a county in which any property of the non-resident decedent is located was designed to ". . . cover cases in which the decedent leaves no property at his domicile or provides in his will for separate administration in Pennsylvania: *cf. Harding's Est.*, 12 D. & C. 633, 15 D. & C. 515; *Pepper's Est.*, 148 Pa. 5; *Kortright's Est.*, 19 Dist. 1056, 237 Pa. 138." In the opinion of this court, it was the intention of the legislature, and it is implicit in the statute, that a will may be probated in any county where, *at the time of his death,* any property of the decedent is located.[2] Clearly, Section 301 of the Register of Wills Act and Section 3131 of the PEF Code were not intended to allow the heirs of a decedent, who never resided in and had no property in Pennsylvania, or the heirs of the decedent's spouse, who have had no contacts in Pennsylvania, to send cash to an attorney practicing in this Commonwealth as a means of manufacturing jurisdiction. See also *Restatement (Second) of Conflict of Laws* §314 (b) and comment thereon.

Counsel for Angelina Coco Romita, surviving sister of testator's deceased wife, has taken the position that since no party in interest has appealed from the decree of probate, the grant of letters cannot be collaterally attacked at the audit of the administrator's account. This argument is specious. The jurisdiction of the court over the subject matter of a controversy may be raised at any stage of the proceedings. Where lack of jurisdiction is apparent on the face of the record, the court, on its own motion, should take notice of it. Subject matter jurisdiction cannot be conferred upon the court by the consent of the parties: *Wolfe v. Lewisburg Trust and Safe*

---

2. In *Payne v. Payne*, 239 Ky. 99, 39 SW. 2d 205 (1931) it was held that the presence of property within a state, for the purpose of conferring jurisdiction on the courts thereof to probate the will of a non-resident, is to be determined as of the date of the testator's death and not at any subsequent time.

*Deposit Co.,* 305 Pa. 583. Any adjudication entered by the court having no jurisdiction of the subject matter would be void and necessarily subject to successful collateral attack: *Einsig Est.,* 4 FIDUC. REP. 505; *Piperberg Est.,* 3 FIDUC. REP. 67.

Assuming arguendo that Sections 3131 or 3151 of the PEF Code would permit the probate of the will of a non-resident if none of his property is located in a county of the Commonwealth until the time of probate, the court may, in its discretion, distribute the fund to the parties entitled to it, or may remit the fund to the forum of the domicile of decedent for distribution: *Easby's Est.,* 285 Pa. 60; *Bertin's Est.,* 245 Pa. 256. ***

There are several compelling reasons for this court to refrain from considering the account, and decline to award the assets of the estate to a personal representative of the estate of Nino Grimani when duly appointed and qualified at the place of his domicile. First, there is a concern for the rights of Italian or other creditors. This court will not approve a practice of depositing assets in a distant state or foreign country beyond the reach of possible creditors in the forum where a decedent resided. In *Wolfe v. Lewisburg Trust and Safe Deposit Co., supra,* the Pennsylvania Supreme Court refused to allow distribution of the proceeds of the sale of land in North Dakota by the domiciliary administrator in Pennsylvania, reasoning:

> "Here we have a fund from the sale of land in another state in the hands of domiciliary administrator applicable to the payment of domestic creditors. Even if we did not assume from this record that there was a judicial sale of lands in North Dakota for the payment of debts, and the fund remitted to Pennsylvania to pay domiciliary creditors of a decedent's estate, the fund was raised from the sale of land under the agency agreement and it recognized the existence of Pennsylvania creditors against the estate. But if it did not, these domestic creditors are not to be deprived of the right to assert their claims against a fund belonging to the estate in the possession of the administrator, simply because the administrator or agent proceeded in an irregular way in another state to raise that fund by the sale of land. The administrator certainly would not be permitted to give it forthwith to the heirs without further adjudication. To hold that such thing could be done would be to create a simple device to defraud creditors."
> *Id.* at 590-591.

This court faces a similar dilemma. We cannot approve distribution of an estate when the decedent's creditors in Italy or in other jurisdictions in the United States may never have learned of his death or the location of his assets. ***

It is inappropriate for a Pennsylvania forum to award distribution of the estate of a resident (and possibly citizen) of Italy, all of whose assets accounted for were located in Switzerland at the time of his death.[4]

Further, all parties agree that proper distribution to heirs can be made only after the validity of decedent's last will and testament is determined in accordance with Italian law. The rights of Anna Maria Crosara, an alleged daughter of the decedent, and of the heirs of the estate of Matilda Coco Grimani, decedent's spouse, must be resolved under Italian law. Questions of proper distribution may best be determined by an Italian court. See: *Bertin's Est., supra* at 262.

This court will not consider any items of expense incurred by the accountant by virtue of bringing a non-resident decedent's assets from Switzerland to Pennsylvania. Disbursements may be approved only by an appropriate court having jurisdiction.

Since this court is without jurisdiction, the account will not be audited and, accordingly, no awards will be made.

OPINION BY SHOYER, J., MARCH 10, 1981:

Before us are two sets of exceptions filed to the adjudication of Judge Jamison in the estate of Nino Grimani, deceased. Joseph Bongiovanni, Jr., administrator c.t.a. has filed one set of exceptions, and counsel for Angiolina Coco Romita has filed the other exceptions. Anna Maria Crosara, an alleged daughter of testator residing in Italy, is represented by

---

4. In reaching this conclusion, we rely on the directive of Klein, P.J., in *Hazel Est.*, 11 FIDUC. REP. 169, 23 D & C 2d 344. There, the executor, a corporate fiduciary, which apparently had substantial assets in Philadelphia, of a decedent who resided in Smyrna, Delaware, was issued letters testamentary by the Register of Wills in Philadelphia. Judge Klein, pointing out possible prejudice to creditors and others who might not have knowledge or notice of the proceedings, as well as questions of decedents' estates law in Delaware, determined:

"In the future, except for the most compelling reasons, we will not make awards in cases of this nature other than to a personal representative appointed at the domicile."

23 D & C 2d at p. 348.

Albert B. Gins, Esquire, of New Jersey, who appeared at the argument of the exceptions joining with the other counsel in their briefs, but he has filed no exceptions on behalf of his client to Judge Jamison's adjudication. The testator, Nino Grimani was domiciled in Rome, Italy, and residing there at the time of his death testate on September 9, 1975. He had never resided in Pennsylvania and had no property here at the time of his death. For want of subject matter jurisdiction Judge Jamison, the learned auditing judge, refused to audit the account, and made no awards. We approve of her ruling and so state in our decree. ***

As noted above, decedent's assets at the time of his death were all in Switzerland. Swiss banks were informed that decedent was an American citizen and, therefore, we are told, would not release the assets except to an administrator or executor of decedent's estate. The possibility of getting letters in New York was explored by Mr. Bongiovanni, but an investigation revealed that decedent was never domiciled in New York although at times both decedent and his wife had lived in New York and also in Florida. The possibility of a domicile in Florida had been investigated by others before Mr. Bongiovanni was asked to act and again we are told there was no basis for letters in Florida. Therefore, it was appropriate, Mr. Bongiovanni claims, that an estate be raised in some American jurisdiction so that this estate can be administered.

Mr. Bongiovanni also tells us that under Italian law a will is published after death before a notary (Section 620 of the Civil Code) providing in part: "Whoever is in possession of a holographic will must present it to a notary for publication as soon as he receives notice of the death of the testator." Mr. Bongiovanni assures us that this was done in this case.

Unfortunately, we are also told that under Italian law there is no fiduciary. The estate (successione) comes into being at the moment of death (456 Civil Code). The inheritance is acquired by acceptance of the alleged heirs (459 Civil Code). The heir pays the creditors of the decedent (495 Civil Code). The right of the alleged heirs and others having claims is determined by litigation in a regular court. (Part 33, Part 34 Civil Code). Our unfamiliarity with Italian law does not

permit us to question Mr. Bongiovanni's assertions of how an estate like decedent's is handled in Italy.

Counsel for the two exceptants rely on Sections 3131 and 3151 of the PEF Code (20 Pa. C.S.A. §3131 and 3151).

Section 3131 reads in pertinent part as follows:

"Place of Probate.

If the decedent had no domicile in the Commonwealth, his will may be probated before the Register of any county where any of his property is located."

Section 3151 in pertinent part provides:

"Proper county.

If the decedent had no such domicile in the Commonwealth, letters testamentary or of administration may be granted by the Register of any county wherein property of the estate shall be located."*

Counsel for the exceptants argue that there is no requirement that the decedent's property must be located in the county at the time of the decedent's death. As stated in Judge Jamison's adjudication:

"It was the intention of the legislature, and it is implicit in the statute, that a will may be probated in any county where, *at the time of* his death, any property of the decedent is located. Clearly, Section 301 of the Register of Wills Act and Section 3131 of the PEF Code (which superseded Section 301) were not intended to allow the heirs of decedent, who never resided in and had no property in Pennsylvania, or the heirs of a decedent's spouse who have had no contacts in Pennsylvania, to send cash to an attorney practicing in this Commonwealth as a means of manufacturing jurisdiction."

Counsel also rely on the *Restatement, Conflict of Law 2d* §314 (b) which provides:

"§314. Where will may be probated and representative appointed.

---

* By Act No. 352, Session of 1955, P.L. 1084, effective February 23, 1956, the following sentence was added to Section 301 of the Fiduciaries Act of 1949, predecessor of Section 3151:

"If the decedent had no such domicile in the Commonwealth, and had no property located therein, and service of process is to be made in the Commonwealth upon his personal representative as authorized by law, then letters testamentary or of administration on his estate may be granted by the register of any county of the Commonwealth and, when granted, shall be exclusive throughout the Commonwealth."

The purpose of this amendment was to provide a forum for claimants against the estates of deceased motor vehicle or aircraft operators involved in accidents. This is clearly shown by reference to Act No. 345, Session of 1955, P.L. 1068, Section 2 (b) and Act No. 351, Session of 1955, P.L. 1081, Section 1 (b), both of which Acts were approved on the same date as Act No. 352, namely February 23, 1956.

The will of a decedent will customarily be admitted to probate and an executor or administrator appointed in the state . . .

(b) where there are assets of the estate at the time of decedent's death or at the time of the appointment of the executor or administrator;"

Among the comments to Section 314 appear the following:

"b. Jurisdiction of State. Any state has jurisdiction to admit a will to probate or appoint an executor or administrator for a decedent. *As a practical matter, however, this will not be done unless there is reason to believe that there is some function for a local officer to perform in the state in the settling of the decedent's estate.* If an executor or an administrator is appointed in a state in the absence of such circumstance and there subsequently develops some occasion for him to act, such as where chattels are brought into the state after the appointment, any action taken by him under the rules stated in this Chapter is valid . . ." (Emphasis supplied)

Our research of Pennsylvania law fails to uncover any case which deals, like this one, with the grant of original letters. However, *Lang's Est.*, 301 Pa. 429 dealing with ancillary letters clearly holds that property of a decedent must be located in the county before letters may be validly issued by the register of wills. It was held in that case that ancillary letters of administration on the estate of a decedent resident at the time of his death in another state, are not grantable by the register of wills of one of the counties of Pennsylvania upon the application of a creditor of the estate resident in such county, who falsely alleged the existence of property therein. The indebtedness due the decedent was evidenced by promissory notes of the debtor held by the decedent in the state of his residence at the time of his death. The court stated (p. 434) :

"The situs of a promissory note is with the owner thereof, wherever he happens to be, and as the notes here involved were in California, there was no part of the goods and estate of the decedent in Jefferson County when the ancillary letters were granted and, therefore, they were improperly issued."

Although in *Lang's Estate*, counsel had agreed to the issuance of the letters our Supreme Court held this was of no moment because subject matter jurisdiction cannot be conferred by agreement of counsel: *Wolfe v. Lewisburg Trust & S.D. Co.*, 305 Pa. 583, 588. Accordingly it was held that the action of

the register of wills in revoking the grant of letters was proper.

Judge Jamison acted sua sponte because in her opinion the court lacks subject matter jurisdiction and the action of the register in admitting the will to probate was beyond his authority and of no effect.

The courts of the state of New York have had occasion to deal with this problem on numerous occasions. [The court here referred to *Estate of Giuseppe De Camillis*, 66 Misc. Rep. 2d, 882, 322 N.Y.S. 2d 551, aff'd 327 N.Y.S. 2d 554 (1971) ; and *Pietraroia v. New Jersey and Hudson River R & F Co.*, 197 N.Y. 434, 91 N.E. 120.]

At first reading, §711 of PEF Code seems clear. Any matter involving a decedent's estate is sufficient for the orphans' court to establish jurisdiction. But such an interpretation, if it does not imply some contact with the state of Pennsylvania would give us a law that exceeded the power and authority of the legislature.

"Under civilized systems of law, a state must have certain minimum contacts with the parties or their property in order to possess legal power to exercise authority through its courts. A judgment rendered in the absence of such contacts will not be recognized or enforced in other states." Introductory note, *Restatement, Second, Conflicts of Laws*, §24.

The state legislature has itself recognized its limitations in enacting Section 714 of the PEF Code:

"§714. Conflict of Laws.

Nothing in this chapter shall be construed to interfere with the Rules of Law applicable to the determination of the question whether Pennsylvania courts have jurisdiction of the subject matter enumerated in this chapter."

The Commission's comment to the predecessor of this section (Orphans' Court Act, Section 303) was as follows:

"There is no statutory precedent for this section which is intended to make it clear that this Act does not attempt to assume jurisdiction in cases where, under the applicable rules of conflict of laws, jurisdiction would be in the courts of another state."

Since we must, therefore, imply in the statute some contact with Pennsylvania, it is clear that the orphans' court would lack subject matter jurisdiction over the Grimani estate if no payment had been made to counsel in Pennsylvania before probate. The question now becomes: Does the

deposit of funds in a Pennsylvania bank in an unabashed attempt to create jurisdiction constitute a sufficient contact with Pennsylvania to give jurisdiction? In the opinion of this court the answer is "no". Support for this position is found in the *Restatement,* in consideration of state interest and in the concern of courts to maintain their dignity and authority.

Section 56 of *Restatement, Conflict of Laws,* 2d, provides in part:

"(1) A state has power to exercise judicial jurisdiction to affect interests in a thing if the realtionship of the thing to the state is such as to make the exercise of such jurisdiction reasonable."

Is it reasonable to conclude that the presence of a $1,200 asset in the jurisdiction, which arrived after the death of the decedent and which was used to create jurisdiction for a much larger estate is such a relationship that it makes jurisdiction reasonable? Clearly it is not. There are no Pennsylvania *creditors, parties, debtors or stakeholders; only attorneys* for the parties live in Pennsylvania. That would certainly be a novel 'contact' for establishing and keeping jurisdiction.

State interest and policy are the next consideration. Does the state wish its courts to be the largely unpaid arbiters of cases from distant jurisdictions, issuing decrees which would be unenforceable, while the state receives not a penny of tax revenue? Does the state wish to encourage international jurisdiction-shopping by permitting ingenious devices to create jurisdiction far from the true parties? With a little imagination, cases could be litigated and disposed of in a forum selected for its compliant judiciary, tax revenue and procedural rules, completely without any consideration of interested parties such as creditors, heirs and the like. This is a practice which should be promptly eliminated by denying jurisdiction in this case, not because of suspicion of base motives of counsel but because of the mischief such a precedent would cause. Counsel has candidly admitted in his brief that New York and Florida, two jurisdictions with greater contacts to the present case than Pennsylvania, were unsuccessfully approached to take jurisdiction.

The accountant urges us to audit his account and to order distribution to the widow's sister subject to a final distribution as ordered by an Italian court. This we cannot do. Even

where the Pennsylvania court has jurisdiction as in *Bertin's Est.*, 245 Pa. 256, the Supreme Court said it was better to have the will of a French domiciliary construed by the courts of her domicile in France and referred the legatee claimant to that court for consideration of her claim.

We have presented to us a case of collusion and legal fraud in the proceedings before the register of wills. We do not regard the accountant as guilty of actual fraud, for what he did he did openly, and with a claim of legal right, but by an error of judgment he was led to adopt a course of procedure that amounted to a legal fraud upon this court, the daughter claimant and possible creditors in Italy, and possibly the Italian government. Under such circumstances this court cannot exercise jurisdiction over this estate, at least under present circumstances. Our plain duty is to direct return of the assets to the domicile of the decedent in Italy. We will also order the letters of administration c.t.a. to be vacated.